The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Ruben Guy JONES, Defendant-Appellant.

No. 85CA1123.

Colorado Court of Appeals, Div. I.

April 23, 1987.

Rehearing Denied May 21, 1987.

Certiorari Denied (People) Sept. 8, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Maureen Phelan, Cynthia D. Jones, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Cooper & Kelley, P.C., Tom French, Denver, for defendant-appellant.

CRISWELL, Judge.

Defendant, Ruben Jones, appeals the judgment of convictions of first degree assault and crime of violence. Because we conclude that the trial court erred in admitting irrelevant evidence of the victim's good work record, we reverse.

Defendant and the victim were co-employees and defendant's convictions arose out of an altercation between the two which took place away from their place of employment, during which the co-employee sustained a gunshot wound. Both defendant and the co-employee testified that the other was the aggressor, and each asserted that he was acting in self-defense. Moreover, the evidence was in conflict as to whether the co-employee received his injury as a result of defendant's intentional act or whether it resulted accidentally, while they were struggling for control of the gun.

In support of his claim of self-defense, defendant testified that, several days before the incident at issue, the co-employee had initiated a quarrel with defendant at their workplace. His description of the co-employee's alleged threats and actions during this earlier quarrel would, if credited, have established that defendant reasonably believed, when the two had their later confrontation, that he needed to use force against the co-employee to prevent his own death or serious injury.

The co-employee, on the other hand, testified that it had been defendant who had started their earlier quarrel; that defendant had threatened him at that time; and

that their later altercation occurred when defendant followed the co-employee's vehicle and attacked him when he was required to stop for traffic. According to the co-employee, defendant beat him with a chain and drew a gun when the co-employee managed to disarm defendant of the chain.

Several witnesses observed the late stages of this fight. While all of them witnessed defendant striking the co-employee with a chain (an action, according to defendant, designed to fend off the co-employee's attack with a knife), and while some heard a gun discharge, none could determine which of the two was responsible for firing the gun.

This conflicting evidence resulted in the relative credibility of the two participants being the central issue presented for jury determination.

### I.

■ Defendant contends that the trial court erred when it allowed evidence that the co-employee was an excellent worker. We agree.

Two witnesses called by the prosecution during its case-in-chief had previously supervised both defendant and the co-employee. Over objections that their testimony consisted of inadmissible character evidence, *see* CRE 404(a), these witnesses were allowed to testify that the victim was an "excellent worker" who had never had trouble with other workers, and who was one of the Department's "top employees." They also testified that it was common knowledge that the co-employee was highly regarded by other employees.

The People argue that such evidence was admissible under CRE 404(a)(2) to rebut "evidence of a pertinent trait of character of the victim of a crime offered by an accused." We conclude, however, that the defendant did not present any evidence going to the co-employee's "trait of character" and, in any event, even if the cross-examination of the co-employee could be equated with the receipt of character evidence, the testimony offered by the People was not relevant to any issue raised.

The cross-examination of the co-employee established that the previous quarrel with the defendant occurred when the co-employee intruded into a conversation between defendant and another person. It also established that various threats were exchanged between the defendant and him at that time. The co-employee testified that he refused to fight defendant on the job, but agreed to do so "after work." He testified that, like other employees, he carried a knife and defendant knew that he possessed one. Finally, the co-employee testified that he normally left work a few minutes early (as other employees did) to pick up his son, but that, on the day of his quarrel with defendant and on the succeeding day, he waited for defendant outside their workplace for 30 to 45 minutes in order to settle their quarrel through a fight.

It was this testimony upon which the People relied in offering the later testimony that the co-employee was a good worker. However, a review of the co-employee's cross-examination leads to the conclusion that the evidence adduced did not concern any "trait of character" of the co-employee. It related to his specific actions on a specific occasion; no inquiry was made whether he acted in a similar manner on other occasions.

Hence, the People's evidence could not properly have been admitted to rebut evidence of some trait of character introduced by the defendant because the defendant introduced no such evidence. *See Carson v. Polley*, 689 F.2d 562 (5th Cir.1982). And it was inadmissible to prove that he acted peaceably on the specific occasion in question. CRE 404(a). *See People v. Hansen*, 708 P.2d 468 (Colo.App.1985).

■ Furthermore, even if it were assumed that character evidence of some sort would have been proper rebuttal evidence, there is little, if any, logical connection between being a good worker and having a peaceful character. To the extent that evidence that the co-employee was a good worker had some relevance upon the question of his aggressiveness, its prejudicial

effect upon the issue presented far outweighed its probative value. *See* CRE 403; *People v. Botham*, 629 P.2d 589 (Colo. 1981).

This improper evidence of the co-employee's good work habits buttressed his credibility and had the effect of a general character endorsement. In this case, the jury's assessment of the co-employee's and the defendant's credibility was crucial to resolving defendant's claim of self-defense. Thus, because the error is likely to have substantially influenced the verdict or to have affected the fairness of the trial proceedings, the conviction cannot stand. *People v. Carlson*, 712 P.2d 1018 (Colo.1986).

## II.

Certain of defendant's other claims must be addressed because of the likelihood of their reoccurrence on retrial.

## A.

Defendant claims that certain evidence of his work record was also improperly admitted. Defendant bases this claim on testimony that he was an average worker; that his supervisor had spoken with him several times about shortcomings in his job performance; that he would often go to his supervisor and complain about occurrences at work; and that he was dismissed from his job after the incident giving rise to his prosecution.

■ We agree that testimony that defendant had been discharged from his job after the incident was inadmissible, since such act had no relevance to any contested issue. *See* CRE 401 and 402; *People v. Carlson*, 677 P.2d 390 (Colo.App.1983). Thus, if a proper objection is made, such evidence should not be admitted on retrial.

■ However, the trial court did not abuse its discretion in admitting the other testimony to which defendant objects. The People's theory of the motive for defendant's alleged actions was that he had reason to believe that his job was not secure. Evidence was produced that, a few days before the incident leading to the charges, the co-employee had reported to defendant's supervisor that defendant was wasting time. As a result, defendant received a reprimand from that supervisor. Under these circumstances, evidence of defendant's general work performance was relevant to demonstrate his lack of job security and to support the People's theory that defendant was motivated to seek revenge against the co-employee. *See People v. Ray*, 640 P.2d 262 (Colo.App.1981).

## B.

Defendant also asserts that the trial court improperly refused to allow him to impeach the co-employee by use of a felony conviction that had been set aside under the Federal Youth Corrections Act (FYCA), 18 U.S.C. §§ 5005–26 (1982). Again, we disagree.

The pertinent provision of the federal act, 18 U.S.C. § 5021, provides that a conviction of a youthful offender, under certain conditions, is "automatically set aside" and a certificate of rehabilitation is issued evidencing that fact. Absent certain circumstances not present here, such a conviction, once set aside, cannot be used for purposes of impeachment in the federal courts. Fed.R.Evid. 609(c).

Colorado has not adopted a rule of evidence similar to Fed.R.Evid. 609. Here, impeachment by use of a felony conviction is permitted under § 13–90–101, C.R.S., which allows a trial court no discretion in the matter. *People v. Yeager*, 182 Colo. 397, 513 P.2d 1057 (1973).

Thus, it would be error not to allow reference to the co-employee's previous felony conviction, unless it can be said that § 5021 was intended effectively to vacate such a conviction, so that it can no longer be considered a "viable conviction" for impeachment purposes under *People v. Wright*, 678 P.2d 1072 (Colo.App.1984). In that case, we held that a Missouri court's dismissal of criminal charges, under a statute similar to § 16–7–403, C.R.S. (1986 Repl.Vol. 8A), relating to deferred sentencing, left no viable conviction extant.

We know of no federal decision addressing the precise question whether § 5021 was intended by Congress to bar impeachment by use of such a conviction in state court proceedings. In a variety of other

settings, however, the federal courts have considered the effect which this provision was intended to have. These decisions are persuasive that Congress intended to preclude any future detrimental judicial use of such convictions. *See United States v. Purgason,* 565 F.2d 1279 (4th Cir.1977); *United States v. Fryer,* 545 F.2d 11 (6th Cir.1976); *Smith v. State,* 50 Md.App. 638, 440 A.2d 406 (1982); *People v. Garcia,* 93 Misc.2d 667, 402 N.Y.S.2d 164 (1978) (a conviction set aside under § 5021 is not a "prior felony conviction" that can constitute an essential element of a subsequent offense or be used to enhance a sentence). Moreover, such a conviction cannot be used as a basis for deportation. *Mestre Morena v. United States Immigration & Naturalization Service,* 462 F.2d 1030 (1st Cir. 1972)

There seems to be some question whether § 5021 requires the physical expungement or sealing of the record of conviction. *Compare United States v. Doe,* 732 F.2d 229 (1st Cir.1984); *United States v. Doe,* 556 F.2d 391 (6th Cir.1977); and *United States v. McMains,* 540 F.2d 387 (8th Cir. 1976) *with Watts v. Hadden,* 651 F.2d 1354 (10th Cir.1981) (dictum only).

Nevertheless, the courts have recognized the general rehabilitative purpose of the FYCA, which was "designed to permit the youthful offenders to lead their lives free from the stigma and effects of a felony conviction." *United States v. Purgason, supra.* This purpose, coupled with the plain meaning of the "set aside" language, has led most courts to decide that a conviction set aside under § 5021 "is vacated and can have no further operative effect." *United States v. Purgason, supra.*

■ Our conclusion, then, is that § 5021 was intended effectively to vacate a conviction and that, under *People v. Wright, supra,* a conviction set aside under the FYCA is no longer a viable conviction for impeachment purposes. Hence, the trial court committed no error in barring such impeachment in the instant case.

## C.

Finally, we reject defendant's claim that the trial court erred in refusing to admit expert testimony to explain how a person might perform an act of violence without intending to do so, how contradictory accounts of the same event might be given by different witnesses, and why defendant might have used excessive force upon the co-employee after the latter was disabled.

The psychiatrist whose testimony was proffered had never talked to or examined the defendant, nor had he listened to any of the trial testimony. Defendant intended to elicit his opinion testimony through hypothetical questions. In disallowing this testimony, the trial court found that it would not assist the jury in understanding the evidence or in determining any of the facts at issue and that, because the expert's testimony followed four days of previous trial testimony, it could not be elicited from the witness through hypothetical questions without confusing the jury.

CRE 702 allows expert witness testimony if it will assist the trier of fact in understanding the evidence or determining the facts at issue. The trial court has broad discretion in ruling on the admissibility of expert witness testimony under CRE 702, and its determination whether such evidence will assist the jury will not be disturbed on appeal absent abuse of that discretion. *See Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424 (Colo.App.1985); 3 J. Weinstein & M. Berger, *Weinstein's Evidence,* 702 [02] (1985).

■ The trial court here did not abuse its discretion in rejecting the proffered testimony. There is record support for the trial court's conclusion that such testimony would not be helpful to the jury under CRE 702 and that, because of the length and nature of previous testimony, it would confuse the jury if the expert's testimony upon the general subjects described were to be elicited by means of hypothetical questions.

The judgment is reversed and the cause is remanded for a new trial consistent with the view set forth herein.

PIERCE and TURSI, JJ., concur.