The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

James K. JONES, Defendant–Appellant.

No. 89CA2111.

Colorado Court of Appeals,
Div. V.

Dec. 19, 1991.

Rehearing Denied Feb. 20, 1992.

Certiorari Denied July 7, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

John R. Olsen, Boulder, for defendant-appellant.

Opinion by Judge REED.

Defendant, James Keith Jones, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree burglary and adjudicating him as an habitual criminal. We reverse and remand for a new trial.

The events underlying this prosecution occurred in April 1989, at the premises of a company service center where the defendant was seen in areas of the facility not generally open to the public. After his departure, a portable two-way radio and a cellular telephone were discovered missing from these areas.

A company employee testified that he saw the defendant wander into a company private office, alone, and emerge a short time later, walking suspiciously with his hands in the pockets of his sweatpants. This employee also saw the defendant exit the building and remove an object from his pocket as he approached a parked automobile. Although the employee could not identify the object because of the distance, it appeared to be the size of either a two-way radio or cellular telephone.

On the following day, the defendant returned to the center where he represented himself to be looking for employment. However, when defendant saw the employee who had observed him the day before, he immediately took flight and was able to elude those who pursued him in his automobile. A week later, defendant's car was located and he was arrested.

Defendant was charged and tried on counts of second degree burglary and

theft. He was found guilty of the burglary count. The jury was unable to reach a verdict upon the theft count and it was dismissed with prejudice. Defendant presented no witnesses and did not choose to testify in his own behalf.

## I.

Defendant contends that the trial court erred in denying his motion for mistrial based upon misconduct of the trial prosecutor in his closing argument to the jury. We agree.

At the outset we note that appellate counsel for the People was not the prosecutor at trial.

We have examined the record and conclude that the prosecutor's statements and remarks during his closing argument were improper and substantially prejudiced defendant's rights to a fair trial. Defense objections to two of these early remarks were overruled by the trial court with its comment, before the jury, that counsel was being "overly sensitive." Defendant's objections were sustained to other of the prosecutor's statements, but only after their prejudicial impact had been visited upon the jury, notwithstanding that the trial court sharply admonished the prosecutor, at one juncture, for his improper arguments.

To the extent, however, that specific objections were not made by the defendant to some of the prosecutor's statements, we conclude that the cumulative, prejudicial effect of this conduct so undermined the fundamental fairness of the trial as to cast serious doubt upon the reliability of the judgment of conviction, and thus, there was plain error. *See Wilson v. People,* 743 P.2d 415 (Colo.1987).

## A.

■ Among the comments by the prosecutor that were most improper are those directed towards defense counsel and her preparation, and those in which he implied that the defense was not being asserted in good faith.

In this regard, the prosecutor referred to the defense theory as "insulting" or a "lie," and the defense challenge to the credibility of a prosecution witness as "cheap innuendos," which he implied was typical in the defense of a criminal case.

Because the items that had allegedly been stolen by defendant were never recovered, the defense argued that they could have been taken by employees of the company. It was the prosecutor's response that such was not likely because, as demonstrated by the evidence, any employee would know that, if the items were stolen, they then would be rendered inoperative and valueless because the company would alter the operation of other equipment necessary to their function.

Within this context, the prosecutor suggested in his argument to the jurors that the defense argument was asserted *only* because the circumstances urged by the prosecutor were not known to the defendant or to defense counsel at the start of the trial. Additionally, he stated, "What a shock it must have been to [defense counsel] to find this out. She comes to court, all ready to shift the blame to some [company] employee."

Any inference that defense counsel had been acting in good faith, but merely mistaken in the assertion of the defense, was soon dispelled by the prosecutor's later statement that, "I'd ask you to listen to [defense counsel's] closing argument, I'd ask you to listen closely to see if she will admit that the Defendant was there, faking interest in a job."

By this remark, defense counsel was challenged to take a position adverse to her client under penalty that if she did not do so, her motives would be suspect.

These remarks were made for the obvious purpose of denigrating defense counsel and, as such, constitute professional misconduct. *See* 1 ABA, *Standards for Criminal Justice,* Standard 3–5.2 (2d ed. 1986).

■ Moreover, the import of the prosecutor's statements was that defense counsel should, or did, know the true facts concerning defendant's presence upon the

premises and that she should concede the accuracy of the prosecution's testimony as to this disputed factual issue. Thus, he implied to the jurors that opposing counsel did not have a good faith belief in the innocence of her client.

Arguments of this nature are highly improper. *Estep v. State*, 129 Ga.App. 909, 201 S.E.2d 809 (1973) (Just as it is improper for a prosecutor to urge his personal belief in the guilt of an accused, so also is it wrong to assert that opposing counsel knows that his client's case is not meritorious); *People v. Monroe*, 66 Ill.2d 317, 5 Ill.Dec. 824, 362 N.E.2d 295 (1977) (statements that prosecutor never heard a weaker defense and that opposing counsel "doesn't believe it.")

Accordingly, we conclude that these arguments and remarks served no legitimate purpose but had the function only of erroneously diverting the attention of the jurors from the factual issues concerning defendant's guilt. *See People v. DeHerrera*, 697 P.2d 734 (Colo.1985); *Wilson v. People, supra.*

### B.

■ Other statements by the prosecutor also constitute error.

During his argument, the prosecutor characterized defendant as a "sneak thief" and then commented that the circumstances of the theft indicated that this was a "James Keith Jones job." He also stated: "The People concede there was no forced entry here. *That is not this defendant's style.*" (emphasis supplied)

The impact of these statements upon the jurors must be analyzed in view of the evidence at trial. This particular prosecutor was depicted in several photographs of the crime scene. Thus, it was clear to the jurors that the prosecutor had taken an active role in the investigation and had personal knowledge of some of the circumstances connected with the offense.

Defendant argues, and we agree, that, by these remarks, the prosecutor implied that the defendant had, in the past, been guilty of criminal conduct or that he was a man of stealthy habits engaged in the practice of stealing the property of others. The statement that it was a "James Keith Jones job" and referring to "defendant's style" can imply only that the method of operation here was the same as employed by the defendant in other thefts.

Accordingly, this implication that defendant had a criminal character left the jury free to speculate concerning the nature of defendant's misconduct and improperly shifted the focus of its attention from the evidence in the case. *See Hawkins v. People*, 161 Colo. 556, 423 P.2d 581 (1967). Further, the record is clear that defense counsel did not invite these remarks and that the same were highly improper under the circumstances of this case. *Cf. People v. Valdez*, 725 P.2d 29 (Colo.App.1989).

### C.

We further agree with the defendant that the argument of the prosecutor was improper (a) in expressing his personal belief in the credibility of a prosecution witness, (b) in implying that the charges filed by the People had received the pre-trial approval of a judge, and (c) in stating to the jurors that because of investigation by the district attorney's office, no charges are filed "if there is any reasonable doubt."

As noted before, at the time these arguments were made, the jurors were fully aware that this prosecutor had taken an active and personal role in the investigation of the crime. Thus, the implication was made that he had personal knowledge of the circumstances under which it was committed.

■ Referring to the chief prosecution witness, the prosecutor described him as an outstanding employee of the company and "an exemplary citizen for what he has done." He further stated:

You would think that you would get used to it in a court of law, but it never stops being bothersome that when a witness in a criminal case has the courage to come forward *and testify truthfully*, the defense tries to put that witness on trial

with cheap innuendos. (emphasis supplied)

Other comments made by him fully extolled the witness' response to cross-examination because the witness "has truth as his shield."

We conclude that this argument indicates a misplaced zeal to win the case and, when viewed in proper context, was employed by the prosecutor to interject his personal beliefs and to exhort a conviction based on matters outside the record.

 An attorney's personal belief in the veracity of a witness' testimony is not a proper subject of closing argument. *Wilson v. People, supra; People v. Smith*, 685 P.2d 786 (Colo.App.1984). Consequently, the law requires that the prosecutor's personal opinion as to the truth or falsity of any testimony or as to guilt shall not be outwardly indicated nor presented to the jury as an interpretation based upon legitimate inferences which might be drawn from the evidence adduced at trial. *People v. Wright*, 182 Colo. 87, 511 P.2d 460 (1973); *People v. Trujillo*, 624 P.2d 924 (Colo.App.1981).

This rule is especially true if, as here, the argument is delivered in combination with the intimation to the effect that the prosecutor's office would not bring charges against "anybody who might even possibly be innocent." *See People v. Medina*, 190 Colo. 225, 545 P.2d 702 (1976); *People v. Martinez*, 652 P.2d 174 (Colo.App.1981).

 We further disapprove of the prosecutor's comment that: "Once we have all the facts, if there is any reasonable doubt, we don't file charges." We note that, although an objection was sustained to this remark, no further adequate curative instructions were given to correct this error.

 This statement, together with the remark that the proper charge was "the same charge [Second Degree Burglary] that the Judge signed," and that a judge had signed the warrant, unmistakably implied that because of pre-trial screening, there could be no doubt of defendant's guilt.

### D.

 A prosecutor may strike hard blows, but he is not at liberty to strike foul ones in the course of his closing argument. *People v. Wright, supra.* In determining whether prosecutorial impropriety mandates a new trial, appellate courts are obliged to evaluate the severity and frequency of the misconduct, any curative measures taken to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to defendant's conviction. *See People v. Mason*, 643 P.2d 745 (Colo.1982). Reversible error exists if there are grounds for believing that the jury was substantially prejudiced by improper conduct. *People v. Trujillo, supra.*

 We note too that this is not a case in which the evidence against the defendant may be characterized as overwhelming. The central issues at trial concerned whether the defendant was on the company premises for a legitimate purpose or whether the reason for his presence was feigned in order to steal the missing items. Because the missing items were never accounted for and no one could expressly testify that they saw defendant with them, the case was a close one. It is significant that the jurors were unable to arrive at a verdict on the theft charge. Furthermore, there was no direct evidence in the record to indicate that defendant's theory was an outright fabrication. Thus, we are unable to say in this case, given the closely balanced evidence, that the defendant was not substantially prejudiced by the prosecutor's handling of it.

The prosecutor's ill-advised and improper comments were so numerous that we find no need to assess the prejudicial effect of each isolated comment. *See People v. Rodgers*, 756 P.2d 980 (Colo.1988). Rather, we find that the remarks, as a whole, when viewed in light of the evidence, were highly prejudicial and that, as a result, defendant was deprived of a fair trial requiring that the judgment of conviction be reversed. Because this conviction served as the predi-

cate conviction for the habitual criminal adjudication, it likewise must be reversed.

## II.

Defendant argues that the dismissal of the theft charge precludes conviction on the charge of burglary inasmuch as the jury must have implicitly rejected any evidence of intent to steal. On this basis, defendant, in effect, contends that he may not be retried on the burglary charge. We disagree.

In order to prevail on an inconsistent verdict claim, the defendant must demonstrate that the jury had to rely on the very same evidence in producing two apparently inconsistent conclusions. *People v. Strachan*, 775 P.2d 37 (Colo.App.1989).

Here, the jurors could rationally have entertained reasonable doubt on the charge of theft while being convinced that defendant had the intent to steal. Proof that defendant succeeded in stealing the radio and cellular telephone was less than clear, but the case was different with burglary. The testimony of the persons who saw defendant enter and remain on the company premises in areas where he was not authorized to be, and who testified that defendant did not follow through with applying for a job, was sufficient to establish an intent to commit a crime.

Thus, because there was evidence apart from theft to show burglary, the dismissal of the theft charge and the verdict finding defendant guilty of burglary were not inconsistent. *See People v. Gallegos*, 181 Colo. 264, 509 P.2d 596 (1973); *People v. Pappadiakis*, 705 P.2d 983 (Colo.App.1985).

Our ruling makes it unnecessary for us to consider the additional issues raised by defendant.

The judgment is reversed, and the cause is remanded for a new trial.

STERNBERG, C.J., and RULAND, J., concur.