The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

**Javier Cullermo ORNELAS,**
Defendant–Appellant.

No. 95CA0224.

Colorado Court of Appeals,
Div. V.

Sept. 26, 1996.

Rehearing Denied Oct. 31, 1996.

Certiorari Denied May 27, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Paul Koehler, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David M. Furman, P.C., David M. Furman, Louviers, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Javier Cullermo Ornelas, appeals the judgment of conviction entered on a jury verdict finding him guilty of aggravated possession of cocaine with intent to distribute. We affirm.

While executing a search warrant for contraband in defendant's home, police placed defendant and his guests in handcuffs. The police discovered over a kilogram of cocaine together with measuring scales and a large amount of cash. Thereafter, defendant was formally arrested and made two separate inculpatory statements to the police.

At a hearing on a motion to suppress the statements, the trial court determined that one statement to police was involuntarily made. However, it concluded that the subsequent statement was voluntary and admissible.

I.

Defendant first contends that he was arrested and placed in custody at the moment he was handcuffed and, at that time, the police lacked probable cause to arrest him. Therefore, he reasons, the trial court erred in denying the motion to suppress his statement. We disagree.

In *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court addressed whether a person on the premises where a search warrant is being executed may be detained incident to execution of the warrant absent grounds for arrest and whether a subsequent search of that individual is constitutionally permissible.

There, police encountered the defendant as he descended the front steps of a house they were about to search for narcotics pursuant to a search warrant. The police requested his assistance in gaining entry.

After entry into the premises, the defendant was detained and brought inside while the warrant was executed, and when the police found drugs in the basement and ascertained that defendant owned the house, he was arrested and searched, resulting in the discovery of heroin in his pocket. After the

defendant was charged with possession of heroin, he moved to suppress the material as the product of an illegal search.

The trial court and the state appellate courts suppressed the evidence. On certiorari, the Supreme Court reversed, holding that: (1) the initial detention of the defendant while the police executed the valid warrant to search his home did not violate his Fourth Amendment rights because the warrant implicitly carried with it a limited authority to detain the occupants of the premises while a proper search was conducted; and (2) since it was lawful to detain the defendant until evidence establishing probable cause to arrest him was found, his arrest and the search incident thereto were constitutionally permissible.

In so holding, the Court noted that the initial detention constituted a "seizure" within the meaning of the Fourth Amendment, that the defendant was not formally arrested until after the search was completed, and that the seizure was unsupported by probable cause. Nevertheless, the court stated that such a seizure was permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because the seizure constituted a limited intrusion on the personal security of the defendant and was justified by such substantial law enforcement interests that it could be made upon less than probable cause, so long as the police had an articulable basis for suspecting criminal activity. The Court relied upon several important factors in reaching this conclusion.

First, the police had obtained a warrant to search the defendant's house for contraband. Thus, a neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there.

Second, substantial law enforcement interests existed, including prevention of flight in the event that incriminating evidence was found, minimization of the risk of harm to the officers conducting the search, and facilitation of the orderly completion of the search by the presence of the occupants.

Third, the articulable suspicion required under *Terry* was itself embodied by the search warrant because a neutral magistrate, rather than an officer in the field, had made the critical determination that the police should be given special authorization to intrude upon the privacy of a home.

The Court determined further that the detention was substantially less intrusive than a full-fledged arrest, in part because the defendant was detained at his own residence. Thus, the seizure would add only minimally to the public stigma associated with the search itself.

We conclude that the rationale of *Summers* is applicable here. Defendant was present at his home when the police arrived with a valid warrant authorizing a search for cocaine. At that time, the police had an articulable basis for suspecting criminal activity at the home, and had obtained the imprimatur of a neutral and detached magistrate who had independently determined that probable cause existed. Thus, the search warrant implicitly carried with it the limited authority to detain defendant while the police conducted their search.

As a result, because it was lawful to detain defendant until evidence establishing probable cause to arrest him was found, his subsequent formal arrest and the statements given thereafter did not violate the Fourth Amendment.

Other courts have applied the *Summers* rationale to validate seizure of a defendant upon less than probable cause in similar circumstances. In *United States v. Price,* 888 F.2d 1206 (7th Cir.1989), the court held that it was proper under *Summers* to require the defendant, who was found in his bed, to lie at gunpoint for several minutes while the bedroom was inspected under a warrant to search for a sawed-off shotgun.

In *State v. Banks,* 720 P.2d 1380 (Utah 1986), the court indicated that a *Summers*-type detention may include handcuffing the detainee because the search warrant authorized a search for narcotics which can be easily disposed of or concealed. Thus, the police had reason to restrain the defendant to

prevent him from secreting contraband and to preserve the premises during the search.

Likewise, here, it was permissible to restrain defendant in handcuffs to prevent his flight, for the security of the officers involved, and to prevent disposal of contraband being sought under the search warrant. *See also People v. Martinez,* 801 P.2d 542 (Colo. 1990) (when defendant was about to enter a house where a search warrant had uncovered drugs and weapons, police officer pursuing investigatory stop could handcuff defendant even though police had no reasonable suspicion that defendant was involved in any crime); 2 W. LaFave, *Search & Seizure* § 4.9(e) (3d ed. 1996).

We are not persuaded by defendant's contention here that he was arrested *before* the police discovered contraband. Rather, the seizure, as indicated above, was not itself an arrest. Further, the trial court found, with record support, that the arrest occurred after completion of the search. Accordingly, we decline to disturb those findings. *See People v. Jordan,* 891 P.2d 1010 (Colo.1995).

## II.

■ Defendant next contends that, because it was involuntary, the trial court erred in failing to suppress the second statement he made to the police the day following his arrest. We disagree.

■ To demonstrate the admissibility of a subsequent confession that may be tainted by a prior involuntary confession, the prosecution must establish that the connection between the initial illegality and the evidence has become so attenuated as to dissipate the initial taint. The illegal taint may be purged if the voluntariness of the second statement is shown.

■ In assessing voluntariness, a court must decide whether the statement at issue was sufficiently an act of free will, an assessment to be made in light of the totality of the circumstances surrounding and inhering in the interrogation under consideration. *People v. Thomas,* 839 P.2d 1174 (Colo.1992).

■ In regard to such assessment, the term "totality of circumstances" includes an examination of the following: Whether the defendant was in custody or was free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant, the length of the interrogation, and where was it conducted; the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system. *People v. Gennings,* 808 P.2d 839 (Colo.1991).

■ .As pertinent here, however, there are three additional important factors that must be examined when determining the voluntariness of statements given subsequent to coerced statements: (1) the time that passes between statements; (2) the change in place of interrogations; and (3) the change in identity of interrogators. *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *People v. In Interest of T.C.,* 898 P.2d 20 (Colo.1995).

Here, the trial court found, with record support, that defendant's subsequent statement was made the day following his arrest, after defendant was readvised of his *Miranda* rights and had waived them. Further, the record reveals that the place of interrogation and identity of the interrogator were different. Hence, there is sufficient support for the trial court's finding that the subsequent statement was not tainted by any previous coercion. Because the findings are supported by the record, they will not be disturbed on review. *See People v. Thorpe,* 641 P.2d 935 (Colo.1982).

## III.

■ Defendant next contends that the trial court erroneously precluded introduction

of evidence concerning alternate suspects. He asserts that he was improperly precluded from presenting evidence that his occasional houseguests who were present during the execution of the search warrant had previously been convicted of distribution, manufacturing, dispensing, sale, and possession of cocaine. It was his theory that the houseguests were alternate suspects. We find no abuse of discretion in the trial court's ruling and, thus, disagree with his contentions.

A defendant may prove his or her innocence by proving guilt of another person. This may include proof of similar offenses when such evidence is offered by the defense. *People v. Flowers*, 644 P.2d 916 (Colo.1982).

Admissibility of similar offense defensive evidence proceeds on a case-by-case basis. If all of the similar acts and circumstances taken together may support a finding that the same person was probably involved in both transactions, then evidence that the defendant did not commit the other transaction is relevant and admissible. *People v. Bueno*, 626 P.2d 1167 (Colo.App.1981).

If the details of the other crime are not distinctive or unusual enough to represent a "signature" of a single individual, and thus do not support a finding that the same individual was involved in all transactions, a trial court does not abuse its discretion in refusing to admit such evidence. *People v. Flowers, supra.*

Here, defendant failed to demonstrate that the facts of the crimes of the supposed alternate suspects were "similar" in any sense to the details of the instant offense. The mere fact of convictions of the houseguests is insufficient, standing alone, to meet the *Flowers* test. Accordingly, we reject defendant's contention.

### IV.

Relying upon *People v. Jones*, 832 P.2d 1036 (Colo.App.1991), defendant next asserts that, because the jury learned that a narcotics detective believed probable cause existed to conclude that there was cocaine in defendant's house and that a judge had authorized a search warrant for the house, such facts invaded the fact-finding province of the jury, resulting in a denial of a fair trial. We disagree.

Initially, we note that defendant did not object to this evidence at trial. Therefore, a plain error standard of review applies. Crim. P. 52. Plain error exists only if an appellate court can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt upon the reliability of the judgment of conviction. *Wilson v. People*, 743 P.2d 415 (Colo.1987).

In *People v. Jones, supra*, a division of this court disapproved arguments made by a prosecutor implying that there could be no doubt concerning the defendant's guilt because the charges and a warrant had been signed by a judge. Those comments were condemned in the context of numerous other instances of prosecutorial misconduct.

Here, in contrast, even if we assume that it was error to allow the detective to testify that he had presented evidence to a judge to obtain a search warrant, and that a search warrant had issued, the reference was fleeting, and we discern no pattern of misconduct, nor any indication from the record that such testimony undermined the fundamental fairness of the trial. Further, the statement that the police had obtained a warrant merely explains the authorization for their presence. It is not tantamount to an assertion that defendant *must* therefore be guilty. Consequently, we reject defendant's contention.

### V.

Defendant next contends that the trial court erred when it admitted his statements concerning importation of large amounts of marijuana by a third person. The People respond that the evidence was admissible as *res gestae* evidence. We agree with the People.

Evidence of other offenses or acts that is not extrinsic to the offense charged, but rather is part of the criminal episode or transaction with which the defendant is charged, is admissible to provide the factfinder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred. *People v. Quintana*, 882 P.2d 1366 (Colo.1994).

Such evidence is generally linked in time, nature, and circumstances with the charged crime, forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. This type of evidence is considered part of the *res gestae* of the offense and is not subject to the general rule that excludes evidence of prior criminality. *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

*Res gestae* evidence includes the circumstances, facts, and declarations which arise from the main event and serve to illustrate its character. *Woertman v. People,* 804 P.2d 188 (Colo.1991).

Here, defendant was charged with possession with intent to distribute. This charge, *inter alia,* requires the prosecution to prove both that defendant knowingly possessed the cocaine and also that the purpose of his possession was ultimately to distribute it. Information surrounding defendant's activities and knowledge relative to the distribution of other drugs, included in his admissible statements to the investigating officers, is clearly related to defendant's knowledge and intent to distribute the cocaine, particularly because defendant asserted that he possessed the kilogram of cocaine for his personal use only. Consequently, the evidence relates to the entire episode, and illuminates the context of the charged offense.

Further, the evidence was linked in terms of time and circumstances with the charged offense, and completed the story of the crime for the jury because it explained defendant's comprehensive knowledge concerning the distribution of drugs and their sources.

We therefore reject defendant's contention.

## VI.

Finally, defendant asserts that the jury instruction concerning aggravated possession of cocaine relieved the prosecution of its burden of proof and conflicted with another instruction. The jury was instructed, *inter alia,* to find defendant not guilty if the prosecution failed to prove each of the elements of aggravated possession of cocaine beyond a reasonable doubt. Defendant asserts that the instruction may be interpreted

to mean that a not guilty verdict may not be entered if the prosecution fails to prove one element of the crime, but proves the remaining elements, and thus denied him due process by diminishing the prosecution's burden of proof. We disagree.

Defendant did not object to the instructions given at trial. Thus, a plain error standard of review applies. Instructional plain error does not occur unless a review of the entire record discloses that the error so undermined the fundamental fairness of the trial that the reliability of the conviction is cast into doubt. *People v. Cowden,* 735 P.2d 199 (Colo.1987).

A similar argument was raised and rejected in *People v. Freeman,* 739 P.2d 856 (Colo. App.1987). We agree with the reasoning in that decision and determine it to be dispositive of this issue. *See also People v. Watson,* 892 P.2d 388 (Colo.App.1994).

The judgment of conviction is affirmed.

RULAND and ROY, JJ., concur.