**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Augustus Lawson RENFRO, Jr., Defendant–Appellant.**

**No. 03CA0047.**

Colorado Court of Appeals, Division III.

Nov. 4, 2004.

As Modified on Denial of Rehearing Feb. 10, 2005.

Certiorari Denied July 25, 2005.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Augustus Lawson Renfro, Jr., appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on an at-risk adult as a class two felony. He also appeals the classification of his sentence. We affirm.

### I. Background

Defendant was a certified nurse's aide (CNA) at a retirement community. In June 2001, a fellow CNA, C.R., was searching for another CNA to help her lift a patient. C.R. testified at trial that she entered the victim's

room and saw defendant sexually penetrating the victim, an 80–year–old woman. C.R. left the room and told another CNA, K.D., what she had seen, and the two advised their supervisor of the incident. K.D. testified that after advising the supervisor, she returned to the victim's room and witnessed defendant adjusting his clothing and that he appeared to be putting his penis back into his pants.

Defendant denied that he sexually assaulted the victim and testified that he was cleaning the victim after a bowel movement when C.R. entered the room.

On the day of the alleged assault, the victim was examined by V.S., a sexual assault nurse examiner. She testified that the victim had three distinct areas of injury which were consistent with penetration of the genitalia.

## II. Detective's Testimony

Defendant contends that the trial court abused its discretion by allowing into evidence certain bolstering testimony by a police detective and in declining to give the jury a curative instruction. We disagree.

■ We review a trial court's admission of testimony for an abuse of discretion. *People v. Jones*, 743 P.2d 44 (Colo.App.1987).

■ Bolstering testimony is generally improper. *See Tevlin v. People*, 715 P.2d 338 (Colo.1986); *see also People v. Gillispie*, 767 P.2d 778 (Colo.App.1988). Bolstering testimony is improper when it relates to the witness's truthfulness on a specific occasion and when the foundational requirements of CRE 608(a) are not met. *Tevlin v. People*, *supra*.

■ Although bolstering testimony is normally inadmissible, where the defense on cross-examination creates the impression that an investigation was less than thorough, the defense has opened the door and the prosecution should be allowed the opportunity to dispel that impression. *See People v. Haymaker*, 716 P.2d 110, 113 (Colo.1986); *see also People v. Tenorio*, 197 Colo. 137, 145–46, 590 P.2d 952, 958 (1979)(where defense opened the door to a topic, the district

attorney had a right to explain or rebut any adverse inferences which might have resulted from the cross-examination question); *People v. Braley*, 879 P.2d 410 (Colo.App.1993)(witness's testimony regarding arguably inadmissible subject was not improperly admitted where defendant opened the door by asking several questions to point out weaknesses in witness's report).

### A. Bolstering Regarding Witness Statements

■ During cross-examination, defense counsel asked Detective Weaver about a statement he had made to defendant during an interview that he had "overwhelming evidence" implicating defendant. Weaver agreed that he had made the statement. Defense counsel then questioned Weaver about the evidence obtained in his investigation up to that point, stating, "in fact, at that particular time, sir, no evidence had been sent to CBI (Colorado Bureau of Investigation), right?" Weaver agreed that much of the evidence had not yet been sent to CBI, which meant that it had not yet been examined and evaluated.

On redirect examination, the following exchange took place between the prosecutor and Weaver:

Q. You were asked about the fact that you confronted the defendant with the fact that you had overwhelming evidence in this matter, but you were also asked about the fact that you didn't have any of the information back from CBI. Now, would you recount for the jury what evidence did you have at that point in time?

A. At that point in time we had what I believe are rock-solid witness statements.

Defense counsel objected, stating: "Judge, I'm going to object to him passing on the credibility of the statements. That's inappropriate. That's the jury's job." The trial court overruled the objection, stating:

[It was] a fair answer because he [Weaver] has been attacked as to why he has not— didn't do more investigation. I think we can allow him to express his opinion as to why he didn't do the investigation. I think

that's where he is going so I'll allow the answer.

Weaver continued, "I had witness statements, again, that I believe to be rock solid."

Defendant contends that this testimony was inadmissible bolstering. We disagree.

Here, the "rock solid witness statements" testimony related to the witnesses' truthfulness on a specific occasion, and thus, the requirements for admission of opinion and reputation evidence of character under CRE 608(a) were not met. Nevertheless, defendant's cross-examination opened the door, enabling Weaver to rebut the inference that he was lying to defendant when he said that he had "overwhelming evidence" against him. Although much of the physical evidence had not yet been examined and evaluated, Weaver still might have had what he believed to be "overwhelming evidence." Therefore, it was proper to allow Weaver to rebut the adverse inference created by defense counsel that he had lied to defendant during his interview about the amount of evidence he had collected.

## B. Bolstering Regarding V.S.

■ Defendant also contends that Weaver's testimony regarding V.S. violated CRE 608(a). Again, we disagree.

During redirect examination, the prosecutor and Weaver had the following exchange:

Q. Now, with regard to the request from [the] Colorado Bureau of Investigations [sic] for additional submission of pubic hairs from the victim in this case, were you aware that she had already declined that?

. . . .

A. No, I was not.

Q. You just knew they had not been submitted?

A. Correct. I saw in the report that they made a request for further ... I trust [V.S.] a hundred and ten percent.

Defense counsel objected, stating, "He's passing on the credibility of [V.S.] now; and that's inappropriate for him to pass on witness credibility and his trust of her. That's the jury's job is to decide credibility of [V.S.]." The court responded, "I agree, it is

the jury's job. I'm going to allow the question. Go ahead."

Although defendant objected to the testimony regarding Weaver's trust in V.S. and the trial court in effect sustained the objection, defendant did not move to strike Weaver's testimony regarding V.S. Because Weaver's answer was nonresponsive, the trial court properly allowed the question to be asked again.

## C. Arrest Warrant Signed by a Judge

■ Defendant contends that the trial court erred in allowing Weaver to testify that he had an arrest warrant that was signed by a judge. We find no reversible error.

The People maintain that defendant failed to object to this testimony at trial. Defendant asserts that he objected as to the arrest warrant testimony when he objected to Weaver's testimony regarding "rock solid witness statements." We agree with the People.

■ A party need not renew an objection to preserve a claim of error on appeal once the court makes a definitive ruling admitting or excluding evidence. CRE 103(a)(2). However, this rule applies only if the substance of the evidence was made known to the court or is apparent from the context of the questions. CRE 103(a)(2). Moreover, failure to object in the trial court on the grounds asserted on appeal is deemed to be a waiver of the objection. *People v. Watson*, 668 P.2d 965, 967 (Colo.App.1983).

Neither defense counsel's objection that Weaver could not pass on the credibility of the witness statements, nor the context in which it was made, identified the reference to the arrest warrant as included in the objection. Furthermore, defense counsel objected to the testimony pursuant to CRE 608 regarding the credibility of the witness statements, not to the prejudicial effect of Weaver's testimony about the arrest warrant.

■ Where the defendant fails to object to evidence at trial, we review the alleged error under a plain error standard. *People v. Dunaway*, 88 P.3d 619, 632 (Colo. 2004). The standard for plain error is whether an appellate court, after reviewing

the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Hoskay,* 87 P.3d 194, 199 (Colo.App.2003). Furthermore, any error allowing testimony regarding a search warrant is not reversible if the reference is fleeting and there is no indication from the record that it undermined the fundamental fairness of the trial. *People v. Ornelas,* 937 P.2d 867, 872 (Colo.App.1996).

Defendant now asserts the admission of the warrant testimony caused unfair prejudice. Here, however, the reference to the arrest warrant by Weaver was fleeting, and there was no indication that it affected the fundamental fairness of the trial. *See People v. Ornelas, supra.*

Additionally, although a division of this court recently held that testimony regarding the procedure for obtaining an arrest warrant was improperly admitted, *see People v. Mullins,* 104 P.3d 299, 2004 WL 2005969 (Colo.App. No. 02CA0465, Sept. 9, 2004), that case is distinguishable. There, the testimony regarding the warrant was extensive and was only one of multiple factors that led the division to conclude that plain error had been committed.

Accordingly, we conclude that the reference to the arrest warrant here did not rise to the level of plain error.

### D. Curative Instruction

Defendant contends that the trial court erred in not giving a curative instruction to the jury regarding Weaver's allegedly improper testimony. We disagree.

Whether additional written jury instructions must be given which properly state the law and fairly and adequately cover issues presented is a matter committed to the sound discretion of the trial court. *People v. Gilbert,* 12 P.3d 331, 338 (Colo.App. 2000). The trial court's exercise of discretion will not constitute reversible error absent manifest prejudice or a clear showing of abuse of discretion. *People v. Burke,* 937 P.2d 886, 890 (Colo.App.1996).

Defendant sought an additional instruction stating: "Determining the credibility and weight to be afforded the testimony of a particular witness is your decision alone. You should not allow judgments made by other witnesses to enter into this decision."

The trial court declined to give defendant's instruction. The jury was instead given a general instruction on credibility at the end of the evidence, which instructed that it was up to it to decide which testimony to believe, and that it could believe all, part, or none of the testimony of any witness. *See People v. Price,* 903 P.2d 1190 (Colo.App.1995)(absent a contrary showing, we presume the jury understood and heeded the trial court's instructions). Because the jury was properly instructed regarding credibility, we perceive no manifest prejudice or abuse of discretion.

### III. Classification of Offense

Defendant contends that the trial court erred by classifying his conviction for sexual assault on an at-risk adult as a class two felony instead of a class three felony. We disagree.

### A. Background

Before July 2000, three degrees of sexual assault existed: first degree, second degree, and third degree. In 2000, the General Assembly combined the offenses of first and second degree assault into one offense entitled "sexual assault." Third degree sexual assault was renamed "unlawful sexual contact." *See* Colo. Sess. Laws 2000, ch. 171, § 18–3–402 at 698. Accordingly, there is now only one crime entitled "sexual assault." Section 18–3–402, C.R.S.2004.

Section 18–3–402(1), C.R.S.2004, now sets forth the element of penetration or intrusion that is required for all forms of sexual assault and lists the various ways in which an individual may commit the crime. Defendant was convicted under § 18–3–402(1)(b), C.R.S. 2004, which provides: "Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if . . . [t]he actor knows that the victim is incapable of appraising the nature of the victim's conduct." Prior to July 2000, defendant's conduct would have been characterized

under the former § 18–3–403 as second degree sexual assault.

Section 18–3–402(2), C.R.S.2004, provides that sexual assault is classified as a class four felony, except as provided in subsections (3), (3.5), (4), and (5) of that section. Defendant was not charged pursuant to any of these subsections. Therefore, defendant's offense was initially classified as a class four felony. However, under numerous statutory provisions, the penalty for sexual assault is enhanced based on the circumstances of the offense. Section 18–6.5–103(7)(a) and (b), C.R.S.2004, provide an enhanced penalty for sexual assault crimes committed against at-risk individuals. *See People v. McKinney*, 99 P.3d 1038 (Colo.2004). Section 18–6.5–103(7) provides:

(a) Any person who commits a crime of sexual assault, as such crime is described in section 18–3–402, sexual assault in the first degree, as such crime was described in section 18–3–402, as it existed prior to July 1, 2000, and the victim is an at-risk adult or an at-risk juvenile commits a class 2 felony.

(b) Any person who commits a crime of sexual assault in the second degree, as such crime was described in section 18–3–403, as it existed prior to July 1, 2000, and the victim is an at-risk adult or an at-risk juvenile, commits a class 3 felony.

The jury determined by special interrogatory that the victim in this case was an at-risk adult. Therefore, the trial court classified defendant's offense as a class two felony, rather than a class four felony. A class two felony sexual assault offense carries a minimum penalty of eight years imprisonment and an indeterminate maximum penalty of the sex offender's natural life. Section 18-1.3-1004(1)(a), C.R.S. 2004. A class three sexual assault felony carries a minimum penalty of four years imprisonment and an indeterminate maximum penalty of the sex offender's natural life. Section 18-1.3-1004(1)(a), C.R.S. 2004.

Defendant contends that because his conduct constituted the crime previously described as second degree sexual assault, the offense should be classified as a class three felony pursuant to § 18–6.5–103(7)(b). The People contend that under § 18–6.5–103(7)(a), all sexual assault crimes committed after July 1, 2000, against an at-risk adult are now classified as class two felonies. The People assert that only sexual assault crimes committed before July 1, 2000, that were previously described as second degree sexual assault, should be classified as class three felonies. We agree with the People.

### B. Statutory Analysis

Statutory interpretation is a question of law that we review de novo. *Hendricks v. People*, 10 P.3d 1231 (Colo. 2000). In construing a statute, we must ascertain and give effect to that intent of the General Assembly. *People v. Cunefare*, 85 P.3d 594 (Colo.App.2003)(*cert. granted* Mar. 8, 2004). To determine the intent, we look first to the plain and ordinary meaning of the statutory language. *Cunefare, supra.* However, where the words chosen by the legislature are unclear in their common understanding, or capable of two or more reasonable constructions leading to different results, the statute is ambiguous. *State v. Nieto*, 993 P.2d 493 (Colo.2000). Where the statute is ambiguous, resort to the legislative history to ascertain legislative intent is appropriate. *State v. Nieto, supra.*

Furthermore, the rule of lenity requires courts to resolve ambiguities in a penal code in favor of a defendant's liberty interests. *Frazier v. People*, 90 P.3d 807 (Colo.2004). However, the rule of lenity is a last resort and will not be applied when we are able to discern the intent of the General Assembly. *Frazier, supra.*

We agree that the intent of the General Assembly cannot be ascertained from the somewhat unclear language of the statute. Section 18–6.5–103(7)(a), the class two felony provision, could reasonably be interpreted, as defendant contends, to require conduct which both satisfied § 18–3–402 and qualified as first degree sexual assault as it existed prior to July 1, 2000. However, § 18–6.5–103(7)(a) could also reasonably be construed, as the People assert, to require only conduct that satisfies the current § 18–3–402, if the crime was committed after July 1, 2000. Because

we conclude that the language of § 18–6.5–103(7) is ambiguous, we look to the legislative history to ascertain the intent of this section.

Section 18–3–402 was repealed and reenacted in House Bill 1107 in 2000. During the hearing before the House Judiciary Committee, Adams County District Attorney Bob Grant testified that the bill combined first degree and second degree sexual assault into one crime of sexual assault. The change was made in response to case law holding that second degree assault was not a lesser included offense of first degree sexual assault. This holding forced the district attorneys' offices to charge both first and second degree sexual assault when there was a question about the amount of force involved, the main difference between first and second degree sexual assault. According to Grant, this caused serious and ongoing problems in instructing juries with respect to lesser included offenses. Grant further testified that the bill was not intended to change substantive law. Hearings on H.B. 00–1107 before the Subcommittee of the House Judiciary Committee, 62d General Assembly, 1st Session (Jan. 20, 2000).

Grant testified again during the hearing before the Senate Judiciary Committee regarding House Bill 1107. At the Senate hearing, Senator Thiebaut raised a concern regarding the retroactivity of the bill. Grant reassured the senator that the bill was not ex post facto legislation. As far as amending every statutory section that referenced "sexual assault," Grant stated:

We recognize that this is a monumental task to go through in every sentencing section and in every section where the law is referenced and break out those committed prior to July 1st, 2000, and those committed after July 1st, 2000, which we had to state effectively. But we have done that ... everywhere that we could find the potential for that kind of confusion to answer just that question. It's not an ex post facto law, because the law in effect up until July 1st, remains in effect for crimes committed before that, but the law in effect after July 1st is simply referenced to a statute that recodifies the same law after July 1st.

At the same hearing, Grant compared the bill to a lifetime supervision provision that was enacted in November 1998 and dealt with a similar situation. In explaining how that provision applied only to crimes committed after it was enacted, Grant stated, "Because of the statute of limitations, there is still a great potential for crimes to be charged that were committed before 1998." He concluded that, under the lifetime supervision statute, the "base sentencing scheme has not changed for [those defendants who committed crimes prior to November 1998]." Hearings on H.B. 00–1107 before the Subcommittee of the Senate Judiciary Committee, 62d General Assembly, 1st Session (Apr. 19, 2000).

We conclude from the foregoing comments that the General Assembly intended that § 18–6.5–103(7)(b) would apply only to sexual assault crimes committed before July 1, 2000 that fit the previous definition of second degree assault. Defendant's interpretation that sexual assault offenses committed after July 1, 2000, should continue to be separated into first and second degree is contrary to the purpose of the bill, which was to create one offense of sexual assault. This conclusion is further supported by the fact that the language defining first and second degree assault no longer appears in the statutes. If the General Assembly had intended the distinction between first and second degree sexual assault to continue to apply to future crimes, it likely would have included that language in the current statute.

Defendant nevertheless contends that Grant testified that the bill contained only one sentence enhancement change, which was not the provision at issue here. Although Grant testified that under the bill, sexual assaults under § 18–3–402(5)(a), C.R.S.2004, would be increased from a class four felony to a class two felony, the remaining sections of the bill addressed conforming amendments. One of these sections included § 18–6.5–103, which dealt with sexual assault involving at-risk adults. As Grant explained, "There were a couple of places where the enhancements jumped a grade because of where they're put, but it recodifies the law to clarify that in fact, if there is non-consensual

sexual penetration or intrusion, it's sexual assault and for the most part the levels remain the same."

This interpretation is also consistent with Grant's statement that the bill "does not reclassify anything that wasn't already classified as sexual assault." In other words, conduct that was not classified as sexual assault before is not classified as sexual assault now. However, because of the previous distinction between first and second degree sexual assault, enhancement provisions that provided a lesser penalty for second degree assault may now have "jumped a grade," or increased from a class four to a class two felony, because first and second degree sexual assault were combined into one offense.

We conclude that the above interpretation is consistent with the intent of the General Assembly. Accordingly, because defendant committed the crime of sexual assault against an at-risk adult in 2001, we conclude that he was properly convicted of a class two felony under § 18–6.5–103(7)(a).

The judgment and sentence classification are affirmed.

Judge VOGT and Judge PICCONE concur.