No. 25874

**The People of the State of Colorado v. Earl W. Scheidt**
(526 P.2d 300)

Decided September 9, 1974.     Rehearing denied September 30, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Alvin D. Lichtenstein, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant was convicted of aggravated robbery, simple robbery, and assault. We reverse all three convictions.

The facts of this case are not in dispute. On the evening of September 10, 1971, the defendant entered a Denver drug store and asked for the pharmacist. The pharmacist identified himself and, noticing the defendant's drunken appearance, assisted the defendant in order that he would not bump into a liquor display. When the defendant asked for two amphetamines, the pharmacist explained that he would need a prescription. The defendant pulled a gun and said, "This is my prescription." The pharmacist then handed the defendant a cigar box containing some old drugs the store had been unable to sell. The defendant took the box, ran out of the store and across the street, and attempted, unsuccessfully, to start his car. The defendant was still sitting in the car when the police arrived.

The defendant testified that he had consumed a large quantity of drugs and alcohol on the day in question and that he had absolutely no recollection of any events concerning the alleged crimes. Two psychiatrists expressed the opinion that at the time in question the defendant had been in a state of toxic delirium induced by drugs and alcohol and that temporary amnesia had accompanied this delirious state. The

testimony of a second psychiatrist substantially supported that of the first.

We agree with the following statement of counsel for the defendant made in the opening brief:

"Knowing the defendant to have entered a plea of 'not guilty,' and knowing that the defendant had not been found legally insane by any of the three examining psychiatrists, the prosecuting attorney embarked on a line of questions, not relevant to the issues, in an attempt to elicit answers which by innuendo and implication would indicate to the jury that the defendant had engaged in some improper or deceitful conduct by not pleading 'not guilty by reason of insanity' rather than 'not guilty,' in an effort to avoid the possibility of going to a state institution .... These questions and the answers elicited were not material or relevant to the issues to be decided in this charge, involved punishment or lack of punishment, the defendant's plea of 'not guilty,' and despite objection of defense counsel were allowed by the trial court and so prejudiced the defendant that he was deprived of a fair trial."

In cross-examination of the defendant, the deputy district attorney first established that the defendant had been confined in mental institutions, including our State Hospital at Pueblo; that he had discussed with others their own court cases; and that, while he was in the county jail in Denver, he was president of the inmate council. From that point on, defense counsel objected to the entire line of questioning.

The prosecutor established that as president of the inmate council the defendant discussed defenses with persons awaiting trial and performed research "in the area of how psychiatry fits into the criminal law." He established that the defendant knew the difference between a competency hearing and a trial on the merits. The transcript continues as follows:

"Question: If the jury in this case finds you are not guilty, do you know the results of that?

"A  Yes, I think I do.

"Q  You'd walk out, won't you?

"A  Yes, sir.

"Q But if it was a sanity trial and you were found not guilty by reason of insanity, do you know the result of that verdict? Where would you go then?

"A It would be up to the court to either order a commitment, or other type of thing.

"Q Did you meet many people down in Pueblo when you were down there that were there as a result of such a verdict?

"A Yes, sir.

"Q You don't want to go to Pueblo, do you?

"A Pardon?

"Q You don't want to go to Pueblo, do you?

"A I have already arranged, whether I am acquitted —

"Q Would you please answer the question, Mr. Scheidt?

"A All right. I don't know whether I am insane or not, or whether I want to go to Pueblo or not, yes.

"Q Mr. Scheidt, are you not aware that this defense that is raised in this case is the only defense that could be raised in a psychiatric sense that would insure that you would not be sent to some institution?

"A Pardon me?

"Q Are you not aware of the fact that this defense, this amnesia defense, this 'I don't know what I was doing' defense, is the only one that can insure that you will not be sent to the State Hospital?"

■ The court not only did not caution the jury to disregard this questioning and did not grant defendant's motion for mistrial, but in open court ruled that the questioning was proper to test the credibility of the defendant. No authority need be cited to support the proposition that testimony as to places of incarceration are not to be placed before a jury.

■ The defendant had the right to use his mental condition at the time as a defense on the merits of whether or not he had the requisite intent. The prosecution appeared to attempt to show that the exercise of this right was a miscarriage of justice. It further seemed to be an attempt to rebut the anticipated testimony of psychiatrists who were yet to testify. This was clearly another example of overzealous prosecution resulting in an unfair trial. *People v. Spencer,*

182 Colo. 189, 512 P.2d 260 (1973); *People v. Wright,* 182 Colo. 87, 511 P.2d 460 (1973); ABA *Standards for Criminal Justice Relating to the Prosecution Function,* § 1.1.(c). *Cf. Dunn v. State,* 277 Ala. 39, 166 So. 2d 878 (1964); *Wise v. State,* 251 Ala. 660, 38 So. 2d 553 (1948); *Boyle v. State,* 229 Ala. 212, 154 So. 575 (1934); *State v. Jordon,* 80 Ariz. 193, 294 P.2d 677 (1956); *People v. Castro,* 182 Cal. App. 2d 255, 5 Cal. Rptr. 906 (1960); *State v. Johnson,* 267 S.W.2d 642 (Mo. 1954); and *Smith v. State,* 220 So. 2d 313 (Miss. 1969).

The judgment is reversed and the cause remanded with directions that the court grant the motion for new trial.

MR. JUSTICE KELLEY dissents.