The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 1, 2025

**2025COA43**

**No. 23CA0590, *People v. Jones* — Evidence — Character
Evidence — Other Crimes, Wrongs, or Acts — Permitted Uses**

A division of the court of appeals holds that when the defense

in a criminal case attacks a witness's credibility, evidence of the

defendant's prior abuse of the witness may be admissible under

CRE 404(b) to buttress the witness's credibility if it could explain

the witness's reluctance to testify or the witness's changed

accounts.

Court of Appeals No. 23CA0590
Pueblo County District Court No. 20CR1477
Honorable Thomas B. Flesher, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Romando Marquis Jones,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

Announced May 1, 2025

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Adrienne R. Teodorovic, Alternate Defense Counsel, Windsor, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Ramondo Marquis Jones, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder.  We affirm.  In doing so, we hold, as a matter of first impression in Colorado, that evidence of a defendant's prior acts of abuse against a witness may be admissible under CRE 404(b) to buttress the witness's credibility if that evidence could explain the witness's reluctance to testify or the witness's changed accounts.

## I.     Background

¶ 2     The prosecution presented evidence from which the jury could reasonably find the following facts.

¶ 3     Jones lived with his girlfriend, D.S., who was the foster mother of the fourteen-month-old victim, A.S.

¶ 4     One morning, while D.S. was cleaning the kitchen in preparation for an in-home foster care visit, Jones brought A.S. downstairs — carrying him by the ankles and bouncing him up and down — to play with A.S.'s siblings, N.A. and Z.S.  D.S. cautioned Jones, saying, "[T]urn that baby over, you're going to hurt him."

¶ 5     Several minutes later, Jones brought A.S. upstairs, laid him on an ottoman, and sat on a couch.  When D.S. came into the room, she heard A.S. gasping for air, and his body appeared limp.

She asked Jones, "What did you do?"  Jones answered, "I just tossed him down.  I['ve] done it before."  As D.S. dialed 911, Jones told her, "I don't give a fuck what you have to do, but you better fucking fix this," and "you better not tell anyone I was here because I wasn't here. . . .  [T]ell them he fell or something."  D.S. then told the dispatcher that A.S. had fallen off a bed.

¶ 6    A.S. went into cardiac arrest before he arrived at the hospital, and he never regained consciousness.  He died from blunt force head trauma.  Doctors noticed many older injuries to his body that were consistent with abuse.

¶ 7    On the day A.S. was taken to the hospital, police officers interviewed D.S. and Jones separately on two occasions.  Before the first interview, Jones warned D.S., "I heard everything that you told them while they were in the house.  Just make sure you keep the same story because we'll have the same story."  In both of her interviews, D.S. told the officers that A.S. had fallen off the bed while she wasn't looking, that N.A. had probably pushed him, and that Jones wasn't home when it happened.  In both of his interviews, Jones told the officers that he wasn't home that morning

2

but had been on the phone with D.S. when she told him one of the children had fallen.

¶ 8    Later that night, Jones took D.S. to a hotel and forced her to shower to ensure she wasn't wearing a wire. He then tried to persuade her to confess to A.S.'s death and tell law enforcement that A.S. died accidentally by falling either off the back porch or down the stairs. D.S. asked Jones "over and over again what he did." Jones would only answer that he tossed A.S. down the stairs and had done it before.

¶ 9    Four months later, when police officers interviewed Jones a third time, his story changed: He told the officers that he was home that morning; he'd taken A.S. downstairs to the playroom before going into the garage to work on his cars; and, while he was in the garage, D.S. accidentally dropped a heavy box containing a bunkbed onto A.S.'s head.

¶ 10    The People charged Jones with first degree murder for knowingly causing the death of a child under the age of twelve while in a position of trust, *see* § 18-3-102(1)(f), C.R.S. 2024, and D.S. with accessory to first degree murder. D.S. pleaded guilty; as part of her plea agreement, she agreed to testify truthfully against Jones.

¶ 11    At trial, the prosecution relied on D.S.'s testimony and evidence showing that Jones had previously abused D.S., A.S., and N.A.  Jones's theory of defense was that the prosecution couldn't prove the elements of first degree murder beyond a reasonable doubt because no one saw what had happened, and D.S. had fabricated her testimony to secure a better plea agreement.

¶ 12    The jury convicted Jones of first degree murder.  The district court sentenced him to life in prison without the possibility of parole.

## II.    Discussion

¶ 13    Jones contends that (1) the district court abused its discretion by admitting evidence of his prior abusive behavior toward D.S.; (2) he's entitled to a new trial because the trial judge demonstrated actual bias against him; (3) the court erroneously admitted evidence of A.S.'s injuries to show that Jones had previously abused A.S.; (4) the court improperly instructed the jurors regarding evidence of A.S.'s and N.A.'s injuries; and (5) even if none of these alleged errors require reversal individually, they do when considered cumulatively. We address and reject these contentions in turn.

## A. Evidence of Jones's Prior Abusive Behavior Toward D.S.

¶ 14    Jones first contends that the court abused its discretion by admitting evidence that he had previously abused D.S. because that evidence was barred by CRE 404(b). We disagree.

### 1. Additional Background

¶ 15    D.S. testified on direct examination that she "repeatedly lied to law enforcement" to cover up the fact that Jones had previously injured the children. Defense counsel then cross-examined D.S. about those lies:

> Q. None of that happened?
>
> A. No.
>
> Q. You just made it up?
>
> A. To cover up, yes.
>
> . . . .
>
> Q. Did [Jones] give you those details that you gave [law enforcement]?
>
> A. Maybe not those exact details, but definitely we talked about what needed to be said as an explanation.
>
> Q. So those details are yours?
>
> A. I learned pretty well how to make things up.
>
> Q. You're good at it. Aren't you?

A. Because of personal as well, yes.

Q. You're good at it?

A. Over time I covered up a whole lot.

Defense counsel then asked D.S. about the tactics she had used to make law enforcement believe her initial stories about how A.S. died. Those tactics included seeking sympathy, appealing to a deity, using body language, being careful with details, and throwing in certain truths.

¶ 16 After cross-examination, and outside the jury's presence, the prosecutor asked the court for permission to admit evidence of several instances of Jones's prior abusive behavior toward D.S. on redirect examination:

(1) Five years before the charged offense, Jones broke D.S.'s jaw and convinced her to make up a story to law enforcement that didn't implicate him.

(2) During a phone call one year before the charged offense, Jones threatened to kill D.S. if she reported him to law enforcement, and he told one of their children to repeat to D.S. more than twenty times over the phone, "[Y]ou're

dead, mama, you're dead. . . . Mr. Jones is going to bury you."

    (3) In the year leading up to the charged offense, Jones physically and sexually assaulted D.S. on a semiregular basis.

    (4) One week before the charged offense, Jones threw D.S. against the wall after she told him not to hurt A.S.'s toe.

The prosecutor argued that this evidence was admissible because defense counsel attacked "[D.S.]'s credibility and opened the door to talking about why she might fabricate stories to cover up [A.S.'s] injuries. . . . Factually, the reason she's had so much practice is Mr. Jones has been physically assaulting her for years and being tasked to lying [sic] about it." Defense counsel opposed the prosecutor's request to admit the proffered evidence, and the court deferred ruling on the evidence's admissibility until it heard more of the prosecution's case.

¶ 17    The following week, the court ruled that the prosecution could introduce evidence of D.S.'s broken jaw, a redacted version of Jones's recorded phone call to her, and evidence of the incident in which Jones threw D.S. into the wall, all under CRE 404(b),

reasoning that "this evidence is logically relevant to a material fact, that being the credibility of the prosecution's witness, [D.S.]" The court found the phone call particularly "demeaning" and "difficult to listen to" but determined that the evidence's probative value outweighed its prejudicial effect.

¶ 18    During D.S.'s redirect examination, the prosecutor introduced into evidence a redacted version of Jones's recorded phone call to D.S., and she testified about the incidents in which he broke her jaw and threw her into a wall. The jury contemporaneously received the following limiting instruction for this evidence:

> Ladies and gentlemen, you're going to hear
> some evidence from [D.S.] that relates to
> things that may have occurred during her
> relationship with Mr. Jones. I'm admitting this
> evidence for a very limited purpose and you
> may only use it to assess [D.S.]'s credibility.
> You may not use it for any other purpose.

### 2.    Standard of Review and Applicable Law

¶ 19    We review a district court's evidentiary rulings for an abuse of discretion. *Nicholls v. People*, 2017 CO 71, ¶ 17. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or based on a misunderstanding or misapplication of the law. *People v. Thompson*, 2017 COA 56, ¶ 91.

8

¶ 20　Evidence of "other crime[s], wrong[s], or act[s]" is inadmissible to show that a defendant has a bad character and acted in conformity therewith. CRE 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." CRE 404(b)(2).

¶ 21　Evidence of a defendant's other acts is subject to the four-prong test articulated in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990). That test asks whether (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the evidence's logical relevance is independent of the inference that the defendant acted in conformity with a bad character; and (4) the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Id.*

### 3.　Analysis

¶ 22　Jones argues that evidence of his prior abusive behavior toward D.S. was inadmissible under CRE 404(b) because it didn't satisfy the first and fourth *Spoto* prongs, and defense counsel didn't open the door for the prosecution to otherwise introduce such evidence. Because we conclude that the evidence was admissible

9

under CRE 404(b), we don't address Jones's opening the door argument.

¶ 23     With respect to the first *Spoto* prong, Jones contends that the evidence didn't relate to a material fact because the jury considered it only for the purpose of assessing D.S.'s credibility, which isn't an element of first degree murder that the prosecution needed to prove. *See Spoto*, 795 P.2d at 1318.  But the first prong of the *Spoto* test isn't so stringent: "So long as the purposes for which the prior act evidence is offered are somehow probative of an ultimate fact, the first prong is satisfied."  *Yusem v. People*, 210 P.3d 458, 464 (Colo. 2009).

¶ 24     D.S.'s credibility was crucial in this case.  She was the prosecution's primary witness at trial, and discussions of her inconsistent testimony dominated opening statements and closing arguments.  Defense counsel told the jurors in opening that "it comes down to what [D.S.] say[s] to you and is she a credible witness"; during closing, counsel said, "At the end of the day, all of these injuries that supposedly happened at [Jones's] hands, you're relying on [D.S.] for all of that," and "if it's, I don't believe [D.S.], he's not guilty."  D.S.'s credibility thus materially informed the

jury's determination of whether Jones killed A.S.  Because evidence that Jones had previously abused D.S. shed light on why she repeatedly lied to law enforcement about A.S.'s death, it was probative of her credibility and therefore relevant to the jury's determination.

¶ 25    We reject Jones's assertion that relevance to credibility isn't a sufficient reason for admitting other acts evidence because CRE 404(b) doesn't expressly say it is.  *See People v. Miller*, 890 P.2d 84, 98 n.15 (Colo. 1995) (upholding the admission of other acts evidence to refute an alibi witness's testimony because "[a]lthough refutation of other evidence is not specifically listed in CRE 404(b) as a permissible purpose for admission of other crimes evidence, that list of permissible purposes is not exhaustive"); *see also* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 190.1, Westlaw (Robert P. Mosteller ed., 8th ed. database updated July 2022) ("As Fed. R. Evid. 404(b) indicates, evidence of criminal acts may be used in numerous ways, and those enumerated are neither mutually exclusive nor collectively exhaustive.").

¶ 26    Indeed, courts in other jurisdictions have concluded that evidence of a defendant's other acts toward a witness may be

11

admissible under Rule 404(b) to rehabilitate the witness's credibility. *E.g.*, *Bryan v. Commonwealth*, No. 2015-SC-000467-MR, 2017 WL 1102825, at *6 (Ky. Mar. 23, 2017) (unpublished opinion) (evidence of the defendant's prior domestic violence toward his ex-girlfriend and co-defendant was admissible under KRE 404(b) to explain why she initially lied to law enforcement); *State v. Carvalho*, 777 S.E.2d 78, 86-87 (N.C. Ct. App. 2015) (when an informant testified the defendant confessed to the charged offenses, evidence of the defendant's previous confessions to other crimes was admissible under N.C. R. Evid. 404(b) to show the nature of their confidential relationship and bolster the informant's credibility), *aff'd on other grounds*, 794 S.E.2d 497 (N.C. 2016); *State v. Scruggs*, 822 N.W.2d 631, 643-44 (Minn. 2012) (when the defendant's girlfriend's testimony that she'd witnessed the defendant strangle the victim was inconsistent with her previous statement to police, evidence of the defendant's prior domestic violence against her was admissible under Minn. R. Evid. 404(b) to show her fear of the defendant, explain her inconsistent statements, and rehabilitate her credibility); *State v. Russell*, 986 A.2d 515, 521-22 (N.H. 2009) (when the defendant's cousin initially told police she

wasn't at the crime scene, later admitted she was and that the defendant was the gunman, and then testified at trial that the defendant wasn't the gunman, evidence that the defendant had previously threatened her was admissible under N.H. R. Evid. 404(b) to rehabilitate her credibility); *State v. Jeffers*, 661 P.2d 1105, 1118 (Ariz. 1983) (evidence of the defendant's prior domestic violence against an accomplice was admissible under Ariz. R. Evid. 404(b) to explain why she didn't immediately report the murder and to counter the defense's insinuation that she lied at trial to gain immunity); *see also State v. Johnson*, 540 P.3d 831, 840 (Wash. Ct. App. 2024) (because "[e]vidence of prior incidents of domestic violence is probative of a witness's credibility in cases where a witness gives conflicting statements about the defendant's conduct," such evidence may be admissible under Wash. R. Evid. 404(b) even if credibility isn't an element of the charged offense).

¶ 27     Jones also contends that evidence of his prior abusive behavior toward D.S. didn't satisfy the fourth *Spoto* prong. *See Spoto*, 795 P.2d at 1318.  He reasons that the evidence was unduly prejudicial because the court found the phone call "demeaning" and "difficult to listen to"; the evidence wasted time

13

because it resulted in a lengthy recess to litigate the evidence's admissibility; and "admitting the evidence allowed the sideshow to take over the circus," thereby confusing the issues and misleading the jury. *See* CRE 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of . . . waste of time . . . .").

¶ 28 Although the evidence carried a risk of undue prejudice, we aren't persuaded that this risk substantially outweighed the evidence's probative value. *See People v. Hamilton*, 2019 COA 101, ¶ 70 (CRE 403 favors the admission of relevant evidence and requires us to afford the evidence its "maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected."). As discussed, the evidence was highly relevant to D.S.'s credibility, which defense counsel attacked by cross-examining her extensively about the lies she'd told law enforcement and the tactics she'd used to make them believe her. Evidence that Jones had previously abused D.S. and threatened to kill her for reporting him to law enforcement helped the jury understand why her trial testimony about A.S.'s death was

inconsistent with her previous accounts to law enforcement. *See People v. Villalobos*, 159 P.3d 624, 630 (Colo. App. 2006) ("[E]vidence of a witness's fear of retaliation is admissible to explain his or her change in statement or reluctance to testify."); *cf. State v. Gunderson*, 337 P.3d 1090, 1094 (Wash. 2014) (concluding that evidence of the defendant's prior domestic violence against the witness didn't satisfy the fourth prong of Wash. R. Evid. 404(b)'s analysis because her testimony gave no conflicting statements about the defendant's conduct and therefore didn't cast doubt on her credibility).

¶ 29    Further, the district court minimized the evidence's prejudicial effect by contemporaneously instructing the jury to consider it only for the purpose of assessing D.S.'s credibility. Absent evidence to the contrary, we presume the jury followed the court's limiting instruction and didn't consider the evidence for any other purpose.

*See People v. McKeel*, 246 P.3d 638, 641 (Colo. 2010).[1]  The court

also required the prosecution to redact the recorded phone call

before introducing it into evidence.  And the prejudicial effect of

Jones's abusive behavior toward D.S. pales in comparison to that of

the charged offense — killing a fourteen-month-old child.  *See*

*People v. Herron*, 251 P.3d 1190, 1198 (Colo. App. 2010) ("Although

the testimony that defendant appeared to follow B.S. was

unfavorable, it was vastly overshadowed by evidence of defendant's

more threatening acts.").

¶ 30      Nor are we persuaded that the evidence confused the issues or

misled the jury.  Although the court took additional time to consider

the evidence's admissibility, it did so outside the jury's presence.

When the jury returned to the courtroom, the trial judge apologized

for the delay, blamed it on himself instead of the parties, and

---

[1] We acknowledge that the district court didn't give the jury a
written limiting instruction regarding this evidence at the close of
the evidence.  But defense counsel didn't ask for one.  *See People v.*
*James*, 117 P.3d 91, 96 (Colo. App. 2004) (rejecting the defendant's
assertion that the trial court should have instructed the jury to
disregard a witness's statement because defense counsel didn't ask
for such an instruction).  Indeed, defense counsel told the court
that she had read all of the tendered written jury instructions and
had no objection to any of them.

explained that the prosecutor would "reserve her redirect on [D.S.] So she will more than likely be recalled at some point later in the trial. But, again, the reason for that is the Court just needed some additional time."

¶ 31   In sum, the district court didn't abuse its discretion by admitting evidence of Jones's prior abusive behavior toward D.S. under CRE 404(b).

## B.   Judicial Bias Claim

¶ 32   Jones next contends that the trial judge should have disqualified himself because of certain statements he made about Jones's recorded phone call to D.S. We see no basis for disqualification.

### 1.   Standard of Review and Applicable Law

¶ 33   We review whether a judge should have disqualified himself de novo. *People v. Dobler*, 2015 COA 25, ¶ 8.

¶ 34   The Colorado Code of Judicial Conduct requires a judge to disqualify himself from a case based on (1) an appearance of impropriety or (2) actual bias. C.J.C. 2.11(A); *see People in Interest of A.P.*, 2022 CO 24, ¶ 26. When, as in this case, defense counsel doesn't move for disqualification, the defendant waives any

argument that the judge should have disqualified himself based on an appearance of impropriety, and we review only for actual bias. *Dobler*, ¶ 7.

¶ 35    To disqualify a judge for actual bias, a party must show that the judge had a "substantial bent of mind against him," *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988), or a "deep-seated favoritism or antagonism that would make fair judgment impossible," *A.P.*, ¶ 31 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  The record must clearly demonstrate the alleged bias; mere speculative statements and conclusions aren't enough. *People v. Jennings*, 2021 COA 112, ¶ 28.

## 2.    Analysis

¶ 36    As noted, the district court ruled that the prosecution could introduce into evidence a redacted version of Jones's recorded phone call to D.S. under CRE 404(b).  The court explained,

> The phone call . . . is frankly hard to listen to.
> But it's extremely, in the Court's mind,
> probative of the nature of the relationship that
> these two folks had.  It shows how Mr. Jones
> felt about [D.S.]  The content of that call is so
> demeaning.  It's difficult to listen to.
>
> Mr. Jones utilizes his son to make threats to
> [D.S.], their son, to indicate that she's dead.

18

The tone and the tenor of that call is frankly horrible. And certainly, the Court in listening to that call has to balance out, I think, the prejudicial effect and the probative value. And certainly, I'm coming down on the side of that's more probative than prejudicial because to make a determination that an individual can talk about and treat someone verbally the way that Mr. Jones did [D.S.] and allow that not to be utilized to show the nature of the relationship excuses that behavior.

. . . .

I think this is probative information. And I don't believe that — I'm not going to exclude it because it's unfair or prejudicial. It's just — it's compelling evidence in my mind and to not allow it excuses an individual or allows an individual to treat someone in that manner with no consequence. And, again, I think it's appropriate evidence to allow. That was probably more of an emotional finding than it needed to be.

¶ 37    We reject Jones's conclusory assertion that, by making the above statements, the trial judge opined that Jones was guilty, thereby "demand[ing] disqualification." The judge never said that he believed Jones was guilty. Rather, he was evaluating the call to determine its potentially prejudicial effect. And the judge's characterization of Jones's statements during the call was accurate. That Jones's behavior may have caused the judge to have an

19

"emotional" reaction wasn't grounds for disqualification. Nor was the judge's statement that to disallow the evidence would "excuse[] that behavior." *Cf. Liteky*, 510 U.S. at 555-56 ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases," and "expressions of impatience, dissatisfaction, annoyance, and even anger" ordinarily don't support a bias challenge.); *Dobler*, ¶ 12 (no actual bias when "the judge's statements that he would be 'haunt[ed]' by his decision to grant probation showed the judge was affected by his prior decision to be lenient with defendant"); *People v. Oglethorpe*, 87 P.3d 129, 137 (Colo. App. 2003) (no actual bias where the judge described the defendant's conduct as "shocking and horrific" and told him, "You say you are not a bad person; that's not right, you are. You are the worst of people.").

### C. Evidence of A.S.'s Injuries

¶ 38 Next, Jones contends that the district court erred by admitting evidence of A.S.'s injuries under CRE 404(b) to show that he had previously abused A.S. We disagree.

## 1.  Additional Background

¶ 39    Before trial, the prosecution notified the district court and the defense that it intended to introduce the following evidence of A.S.'s injuries:

- pictures of A.S.'s bruised face and neck, taken by a Department of Human Services caseworker one month before A.S. died;

- a picture of A.S.'s swollen face that Jones sent in a text message to D.S. three weeks before A.S. died;

- pictures of A.S.'s damaged teeth, taken by a dentist who extracted the teeth two weeks before A.S. died; and

- a skeletal survey performed on A.S. the day he died, revealing healing fractures to his right arm.

¶ 40    Over defense counsel's objection, the prosecution sought to admit this evidence under CRE 404(b) to prove identity, intent, lack of accident, and position of trust with regard to Jones's relationship to A.S.

¶ 41    At a pretrial hearing, the court told the parties it wouldn't rule on the admissibility of the proffered evidence until the prosecution provided more corroborating information, such as police reports

and interviews. After the prosecution provided this information, the court issued a written order in which it ruled that the prosecution could admit the proffered evidence under CRE 404(b) to prove identity, lack of accident, and position of trust.

¶ 42 At trial, the court gave contemporaneous and written limiting instructions concerning the purposes for which the jurors could consider this evidence of A.S.'s injuries.

### 2. Standard of Review and Applicable Law

¶ 43 As noted, we review a court's evidentiary rulings for an abuse of discretion. *Nicholls*, ¶ 17.

¶ 44 Before admitting evidence of a defendant's prior acts under CRE 404(b), the district court, on the basis of all the evidence before it, must find by a preponderance of the evidence that the defendant committed the prior acts. *People v. Garner*, 806 P.2d 366, 372-73 (Colo. 1991).

¶ 45 We review a district court's factual findings for clear error. *People v. Nelson*, 2014 COA 165, ¶ 17. "A district court's factual finding is clearly erroneous only if it has no support in the record." *Id.* (citing *Sanchez-Martinez v. People*, 250 P.3d 1248, 1254 (Colo. 2011)).

### 3. Analysis

¶ 46 Jones asserts that evidence of A.S.'s bruised face and neck, swollen face, injured teeth, and fractured arm was inadmissible under CRE 404(b) to show that he had previously abused A.S. because the record doesn't support the court's finding by a preponderance of the evidence that he caused A.S.'s injuries.

¶ 47 In support of his argument, Jones points to conflicting trial testimony indicating that A.S.'s injuries may have been caused not by Jones but by D.S.'s mother; A.S.'s siblings; or, in the case of A.S.'s swollen face, an allergic reaction.

¶ 48 But it isn't our role to reweigh the evidence; we must defer to the court's factual findings — including inferences and conclusions drawn from conflicting evidence — if the record supports them. *See People v. Padilla*, 113 P.3d 1260, 1261 (Colo. App. 2005).

¶ 49 And the record supports the court's finding that the preponderance of the evidence showed that Jones caused A.S.'s injuries. The prosecution's offer of proof included D.S.'s statements that A.S.'s injuries occurred under Jones's supervision and a pediatric child abuse expert's opinion that A.S.'s injuries were consistent with abuse. At the court's request, the prosecution

supplemented its offer of proof with nearly three hundred pages of documentation, including police reports, medical reports, pictures, and transcripts of police interviews with multiple witnesses. At trial, D.S.'s mother testified that she never took care of, let alone injured, A.S.; D.S. testified that A.S.'s injuries occurred during her twelve-hour work shifts while Jones was caring for him; and the pediatric child abuse expert testified that A.S.'s "injuries are not consistent with an accident and they fall into a category of injuries that we see with children who are abused." *See People v. Grant*, 2021 COA 53, ¶ 74 (upholding the court's implicit finding that the defendant's prior act of attacking a homeowner occurred because, although the homeowner didn't identify the defendant in a photographic lineup, "[t]he court referred to other evidence that linked defendant to the attack"); *cf. People v. Novitskiy*, 81 P.3d 1070, 1072 (Colo. App. 2003) (The court clearly erred by finding that a preponderance of the evidence showed the defendant engaged in prior uncharged criminal conduct because "the only evidence relating to uncharged criminal conduct was the officer's testimony relating defendant's statement. However, defendant did not admit that he had engaged in such conduct; he only stated that

24

he was accused of it and there was not any evidence to pursue charges."), *abrogated on other grounds by Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 34-36.

¶ 50    Because the evidence satisfied the threshold requirement for admissibility under CRE 404(b) and Jones doesn't otherwise challenge its admissibility to prove identity, lack of accident, and position of trust, we conclude that the court acted within its discretion by admitting evidence of A.S.'s injuries to show that Jones had previously abused him.

## D.    Jury Instruction

¶ 51    Jones next contends that the district court improperly instructed the jury regarding evidence of A.S.'s and N.A.'s injuries. We aren't persuaded.

### 1.    Standard of Review and Applicable Law

¶ 52    "We review jury instructions de novo to determine whether they accurately inform[ed] the jury of the governing law." *Hoggard v. People*, 2020 CO 54, ¶ 12. "The district court has substantial discretion in formulating the jury instructions, so long as they are correct statements of the law and fairly and adequately cover the

issues presented." *People v. Gallegos*, 226 P.3d 1112, 1115 (Colo. App. 2009).

¶ 53    Because defense counsel didn't object to the verbal or written jury instructions at issue, we review any error for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14. Plain error is error that is obvious and that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

### 2.    Analysis

¶ 54    The court repeatedly instructed the jury that it was admitting evidence of A.S.'s and N.A.'s injuries "for a limited purpose to establish identity and lack of accident," stating, "You may not consider it for any other reason."

¶ 55    Jones argues that, because "establish" means "prove," the court's limiting instruction "told the jury that the evidence put beyond doubt that Jones had been the inflictor of A.S.'s fatal injury," thereby lowering the prosecution's burden of proof. *See* Black's Law Dictionary 686 (12th ed. 2024). But he doesn't cite, nor are we aware of, any authority prohibiting a court from using the word "establish" when instructing jurors on the limited purpose

for which they may consider CRE 404(b) evidence.  Indeed, the People cite a couple of Colorado cases affirming a defendant's conviction where the trial court used a form of the word "establish" in a limiting instruction similar to the one before us.  *See People v. Owens*, 2024 CO 10, ¶ 45 ("[T]he court agreed to give a limiting instruction before the introduction of evidence regarding the [defendant's other acts], stating that the evidence was 'being offered for the purpose of *establishing* background, motive, relationships between individuals[,] and identification of the defendant' . . . .") (emphasis added); *People v. White*, 680 P.2d 1318, 1320 (Colo. App. 1984) ("The trial court gave an instruction prior to [the victim's] testimony limiting its use to the sole purpose of *establishing* identity . . . .") (emphasis added).  Accordingly, we reject Jones's argument that giving the instruction was plain error.

## E.    Cumulative Error

¶ 56    Because we haven't identified multiple errors, the cumulative error doctrine isn't implicated.  *See Grant*, ¶ 76.

## III.    Disposition

¶ 57    The judgment is affirmed.

JUDGE BROWN and JUDGE YUN concur.