23CA1306 Peo v Hooper 11-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1306
El Paso County District Court No. 22CR3227
Honorable Jessica L. Curtis, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joshua Andrew Hooper,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Grove and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Joshua Andrew Hooper, appeals the district court's judgment of conviction entered on jury verdicts finding him guilty of second degree burglary, first degree trespass, false reporting of identifying information to law enforcement, theft, criminal possession of an identification document, and criminal possession of a financial device. We conclude that Hooper's first degree trespass conviction merges into his second degree burglary conviction. We therefore vacate the trespass conviction and sentence and remand for correction of the mittimus. In all other respects, we affirm.

## I. Background

¶ 2 One morning, a dog sitter went to check on his friends' dogs in their house and found Hooper in the kitchen. The dog sitter believed that no one else would be in the house while the owners were away. He asked Hooper whether he knew the homeowners, and Hooper said that he did. The dog sitter then let the dogs outside. After talking to the homeowners, who said no one had permission to be at the house, he called the police.

¶ 3 Two officers responded to the call. They found Hooper in the backyard with several bags. He refused an officer's repeated

1

commands to stop and put his hands up, saying "Katie" had given him permission to be at the house. Other officers arrived and detained Hooper in the backyard. The bags Hooper was holding contained items from the house; inside the house, drawers were open and numerous items were strewn about. No one named Katie lived at the house and the homeowners confirmed that no one, other than the dog sitter, had permission to be there while they were gone or to possess the various items recovered from Hooper's bags.

¶ 4　　The People charged Hooper with the offenses noted above and criminal mischief.

¶ 5　　A jury convicted Hooper of all charges except for criminal mischief. The district court sentenced him to two years of supervised probation.

## II.　Discussion

¶ 6　　Hooper contends that (1) prosecutorial misconduct during opening statement and rebuttal closing argument warrants reversal of his convictions and (2) the district court erred by failing to merge his first degree trespass (class 6 felony) conviction with his second degree burglary (class 3 felony) conviction. We reject Hooper's first

contention, but we agree with him that his trespass conviction must merge.

### A.    Prosecutorial Misconduct

¶ 7      Hooper contends that the prosecutor committed reversible misconduct in both his opening statement and rebuttal closing argument. Specifically, Hooper points to the following five statements — the first made in opening and the other four in rebuttal closing — made by the prosecutor that he asserts were misconduct:

1.    "I want to make it clear, there's no evidence of any person named Katie ever existing. Katie has never been seen by anyone. The defendant gave no additional identifying or contact information for Katie. And there is no evidence of there being anyone named Katie in the house at any point that night."

2.    "None of that makes any sense at all." (The prosecutor said this when discussing Hooper's defense theory that "Katie" had given him permission to be in the house.)

3. "[T]his affirmative defense relies one hundred and ten percent on the defendant's credibility. And he is not . . . a credible witness."

4. Hooper's "affirmative defense must fail."

5. "His motive is not to be convicted. It's a pretty strong motive here. It's something that would motivate someone to say and do anything to prevent that from happening."

We conclude that none of these statements were improper.

### 1. Applicable Law

¶ 8 A prosecutor has wide latitude when making arguments based on facts presented in evidence and reasonable inferences that may be drawn from those facts. *People v. Ray*, 2025 CO 42M, ¶ 129; *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010). But "a prosecutor, while free to strike hard blows, is not at liberty to strike foul ones." *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005) (quoting *Wilson v. People*, 743 P.2d 415, 418 (Colo. 1987)).

¶ 9 We use a two-step analysis to review claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we look at whether the statement "was improper based on the totality of the circumstances." *Id.* Second, if a statement was

improper, we determine whether it warrants reversal under the proper standard of review. *Id.*

¶ 10 When determining whether a statement was improper, we must evaluate the statement "in the context of the argument as a whole and in light of the evidence before the jury." *Ray*, ¶ 128 (quoting *Strock*, 252 P.3d at 1153). We may also consider the nature of the charges and defenses. *Harris v. People*, 888 P.2d 259, 266 (Colo. 1995).

¶ 11 A prosecutor is allowed to "comment on the lack of evidence confirming [a] defendant's theory of the case." *People v. Duncan*, 2023 COA 122, ¶ 32 (quoting *People v. Medina*, 545 P.2d 702, 703 (Colo. 1976)). And during opening statement, a prosecutor may discuss evidence expected to be presented at trial and "draw inferences from" that evidence. *People v. Manyik*, 2016 COA 42, ¶ 26 (quoting *People v. Estes*, 2012 COA 41, ¶ 19).

¶ 12 But a prosecutor can't express his personal opinion or make statements based on facts not in evidence, *People v. Walters*, 148 P.3d 331, 334 (Colo. App. 2006); nor can he misstate the law or

attempt to shift the burden of proof onto the defendant, *Duncan,* ¶¶ 31-32.[1]

### 2. Analysis

#### a. Lack of Evidence Regarding "Katie"

¶ 13    Hooper first contends that, by pointing out in opening that "there is no evidence of any person named Katie ever existing" and saying, "The defendant gave no additional identifying . . . information for Katie," the prosecutor improperly shifted the burden of proof.  We disagree.

¶ 14    Immediately after the prosecutor's comments about Katie, he went on to say, "The house is full of clear indications that the resident was someone named Amber."  And earlier the prosecutor said that the jury would "hear from Amber that she has no roommates" and "knows no one named Katie."  The prosecutor's statements were grounded in the lack of evidence that would

---

[1] The parties dispute preservation as to some of Hooper's contentions on appeal regarding the statements at issue.  Because we conclude that none of the statements were improper, we don't need to resolve those disputes.

support Hooper's defense, and were therefore proper.[2]  *Cf. Estes*, ¶¶ 22-25 (the prosecutor's statement in opening that the defendant was "making up" a story to justify his presence in a yard wasn't improper because it was, in context, a comment on what the evidence would and would not show).

### b.  Hooper's Version of Events Didn't "Make Sense"

¶ 15    Hooper also contends that the prosecutor's comment during rebuttal closing argument that his theory of defense didn't "make[] any sense at all" improperly denigrated the defense and was an expression of personal opinion.  Not so.

¶ 16    The prosecutor's comment was preceded by a recitation of what Hooper had claimed concerning his permission to be at the house and the evidence that cut against that theory.  So, viewed in context, the challenged statement was to the effect that the evidence presented showed that Hooper's defense didn't "make[] any sense."  Because the statement was tied to the evidence presented, it neither denigrated the defense nor amounted to personal opinion.

---

[2] Defense counsel's opening statement confirmed that the theory of defense was that someone named Katie had given Hooper permission to be in the home.

*See People v. Welsh*, 176 P.3d 781, 788 (Colo. App. 2007) (the prosecutor's statement in closing that the defendant was "trying to blow smoke at" the jury was "arguably within the prosecutor's leeway to point to evidence and inferences that cast doubt on the defense theory or show that evidence on which [the] defendant was relying lacked substance"); *People v. Herold*, 2024 COA 53, ¶¶ 86-89 (the prosecutor didn't give a personal opinion when commenting on evidence that cast doubt on a witness's version of events).

### c.  Hooper's Credibility

¶ 17    Third, Hooper contends that the prosecutor's remark that Hooper's defense "relies on [the] defendant's credibility.  And he is not . . . a credible witness" was improper burden shifting and a misstatement of the law because it implied that he had the burden of proving his affirmative defense of mistake of fact.  Again, we disagree.

¶ 18    A prosecutor may argue that jurors should not believe a defendant, as long as the argument is grounded in evidence presented at trial.  *See Domingo-Gomez*, 125 P.3d at 1050.

¶ 19    When viewed in the context of the prosecutor's closing argument, it's clear that the prosecutor was only trying to dissuade

8

the jury from believing Hooper's theory of defense based on the evidence presented. He made this remark only after recounting many reasons why Hooper's "Katie" defense was untenable given the evidence presented at trial. The prosecutor didn't say or imply that Hooper had to prove anything; to the contrary, he only pointed out the lack of evidence supporting that defense and the surfeit of evidence refuting it.

#### d. Hooper's Defense "Must Fail"

¶ 20 Fourth, Hooper contends that the prosecutor improperly shifted the burden of proof by telling the jury that his defense "must fail." The prosecutor said this after remarking on the credibility of Hooper's story, which was preceded by an examination of the lack of evidence supporting that story and the evidence disproving it. For the same reason that the prior statement wasn't improper, this one wasn't either.

#### e. Hooper's Motive

¶ 21 Fifth, Hooper contends that the prosecutor interjected his personal opinion and disparaged the defense by saying that Hooper had a "motive . . . not to be convicted" and that he would "say and do anything to prevent" a conviction. We disagree.

¶ 22    There is authority supporting the proposition that a prosecutor can't ask that a jury find a defendant who *testified at trial* incredible simply because he is the defendant. *E.g.*, *State v. Basham*, 319 P.3d 1105, 1125 (Haw. 2014). Allowing such argument would "discourage a defendant from exercising his [or her] constitutional right to testify on his [or her] own behalf." *Id.* at 1126 (alteration in original) (quoting *State v. Walsh*, 260 P.3d 350, 363-64 (Haw. 2011)). Because of this concern, in jurisdictions that follow this rule, prosecutors may not argue during closing arguments that "defendants, because they are defendants, . . . have the 'greatest motive to lie.'" *Id.* (quoting *State v. Apilando*, 900 P.2d 135, 149 (Haw. 1995)); *see also United States v. Francis*, 170 F.3d 546, 551-52 (6th Cir. 1999) (attacks on a testifying defendant's credibility at trial must be made by reference to the evidence presented); *State v. Hirata*, 520 P.3d 225, 229 (Haw. 2022) (the prosecutor's remark during closing that the defendant, based only on his party status, had a motive to lie during his testimony was improper).

¶ 23    But this line of authority is distinguishable because Hooper didn't testify at trial. Rather, the only evidence of what Hooper

claimed to believe about permission to be in the house was introduced through the testimony of the dog sitter and officers at the scene, and the officers' body-worn camera recordings. The prosecutor's statements were directed at challenging the veracity of Hooper's statements to others, before charges were even brought. So the concern about chilling a defendant's exercise of his constitutional right to testify isn't implicated. Therefore, these statements weren't improper.

¶ 24 The cases on which Hooper relies to support a contrary conclusion — *People v. Jones*, 832 P.2d 1036 (Colo. App. 1991), and *People v. Scheidt*, 526 P.2d 300 (Colo. 1974) — are distinguishable. In *Jones*, the prosecutor directly attacked defense counsel, using sarcastic language to suggest that the defense was nothing more than a last-minute change of horses asserted without a good faith basis. *Jones*, 832 P.2d at 1038-39. In *Scheidt*, the supreme court chastised the prosecutor for eliciting testimony from the defendant at trial about where he had been confined, which was "not to be placed before [the] jury." *Scheidt*, 526 P.2d at 301-02. And the prosecutor improperly argued that the jury should reject the

defense theory as a "miscarriage of justice." *Id.* at 302. Nothing analogous to the events in *Jones* and *Scheidt* occurred in this case.[3]

## B. Merger

¶ 25     Lastly, Hooper contends that we must merge his first degree trespass felony conviction with his second degree burglary felony conviction. The People concede the point. "[F]irst degree criminal trespass is *always* a lesser-included offense of second degree burglary . . . ." *Whiteaker v. People*, 2024 CO 25, ¶ 21. Therefore, we agree with the parties that the convictions must merge. *Id.* at ¶¶ 2, 24.

## III. Disposition

¶ 26     We vacate Hooper's first degree trespass conviction and merge it into his second degree burglary conviction. On remand, the district court must amend the mittimus to reflect the merger, including as to sentencing. In all other respects, the judgment is affirmed.

---

[3] Hooper contends that the prosecutor's comments, when considered together, amount to cumulative error warranting reversal. *See Howard-Walker v. People*, 2019 CO 69. But because we have concluded that there was no prosecutorial misconduct, the cumulative error doctrine isn't implicated. *People v. Jones*, 2025 COA 43, ¶ 56; *People v. Grant*, 2021 COA 53, ¶ 76.

JUDGE GROVE and JUDGE SCHUTZ concur.