23CA1313 Peo v Roybal 11-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1313
Adams County District Court No. 19CR907
Honorable Kyle Seedorf, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Timothy Nathaniel Roybal,

Defendant-Appellant.

ORDER AFFIRMED

Division B
Opinion by CHIEF JUDGE ROMÁN
Taubman* and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

Philip J. Weiser, Attorney General, Yaried A. Hailu, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Timothy Nathaniel Roybal, appeals the district court's order revoking his Youthful Offender System (YOS) sentence and imposing the previously suspended fifteen-year Department of Corrections (DOC) sentence.  We affirm.

## I.     Background

¶ 2     When Roybal was eighteen years old, he forcibly entered an apartment and robbed five occupants at gunpoint, taking the victims' wallets, cell phones, clothes, and other personal items.  He pled guilty to one count of aggravated robbery, a class 3 felony, in exchange for the dismissal of the remaining fourteen charges.  *See* § 18-4-302(1)(b), (3), C.R.S. 2025.  The district court sentenced him to fifteen years in the custody of the DOC, suspended on the condition that he successfully complete a five-year term in the YOS.

¶ 3     At YOS, Roybal signed a contract that advised him of behavior that could result in his removal or revocation from YOS.  Shortly thereafter, he successfully completed the intake, diagnostic, and orientation (IDO) component of the program.  He then advanced to Phase I of his YOS sentence, a custodial period in which "a range of core programs, supplementary activities, and educational and

prevocational programs and services are provided to offenders." § 18-1.3-407(3.3)(b), C.R.S. 2025.

¶ 4    More than three years into the sentence, YOS conducted an administrative hearing to determine the suitability of Roybal's continued placement in the program.  A multidisciplinary hearing panel recommended revocation from the program based on his failure to comply with the contract.  Specifically, the panel determined that Roybal had violated the terms and conditions of the contract by, among other things, fighting other offenders, advocating and creating a facility disruption, possessing contraband, attempting to introduce drugs into the facility, and engaging in other misconduct that demonstrated his lack of progress toward rehabilitation.

¶ 5    After the YOS warden and the DOC executive director upheld that determination, the prosecution moved to revoke Roybal's YOS sentence and reinstate his DOC sentence in accordance with section 18-1.3-407(5)(c).

¶ 6    The district court held a revocation hearing and then granted the motion.  The court found that Roybal had violated the terms and conditions of the contract and had not

> demonstrate[d] a pattern reflective of likely success in the program. Instead, he consistently demonstrated that he was unwilling to comply with the program rules and routinely engaged in disruptive behavior.

Consequently, the court revoked the YOS sentence and imposed the suspended fifteen-year term in the custody of the DOC.

## II. Analysis

¶ 7 On appeal, Roybal contends that the district court's decision to revoke his YOS sentence must be reversed because (1) the prosecution did not present sufficient evidence establishing that he violated the terms and conditions of the sentence, and (2) the court based its decision on Roybal's failure to progress to Phase II in the YOS program even though he was statutorily ineligible to make the progression when the suitability hearing occurred. We address each contention in turn.

### A. Sufficiency of the Evidence

¶ 8 Roybal contends that the evidence was insufficient for the district court to revoke his YOS sentence because the prosecution failed to prove by a preponderance of the evidence (1) the specific terms and conditions of the YOS underlying the prosecution's

3

revocation motion and (2) a violation of those terms and conditions. We are not persuaded.

### 1. Applicable YOS Law and Standard of Review

¶ 9 The YOS statute provides a sentencing option for certain youthful offenders convicted of felonies as adults. *People v. Miller*, 25 P.3d 1230, 1231 (Colo. 2001) (analyzing section 16-11-311, C.R.S. 2000, the predecessor to section 18-1.3-407). Youthful offenders[1] may be sentenced under the YOS to serve their sentences in a facility specifically designed for the program and separate from inmates sentenced to the DOC. § 18-1.3-407(1)(c)(I). The program consists of multiple phases, which are conducted in a controlled and regimented environment. § 18-1.3-407(1)(a).

¶ 10 Under the statute, the district court must first sentence a defendant to the DOC and then suspend that sentence on the condition that the defendant successfully completes a term in the

---

[1] For purposes of the statute, the term "[y]outhful offender" encompasses "a juvenile or a young adult offender who has been sentenced to the [YOS] or who is eligible for sentencing to the [YOS]." § 18-1.3-407(2)(a)(III)(C), C.R.S. 2025. A "'[y]oung adult offender' means a person who is at least eighteen years of age but under twenty years of age when the crime is committed and under twenty-one years of age at the time of sentencing." § 18-1.3-407(2)(a)(III)(B).

YOS.  § 18-1.3-407(2)(a)(I).  If a defendant successfully finishes the YOS program, then the DOC sentence is deemed to have been completed.  § 18-1.3-407(2)(a)(II).  But if a defendant does not complete the YOS sentence or fails to comply with the terms or conditions of the YOS, then the defendant must be returned to the district court for revocation of the YOS sentence and imposition of the suspended DOC sentence.  § 18-1.3-407(5)(c).

¶ 11    Minimum due process protections are required at a YOS revocation proceeding "for the same reason [those protections] are required for revocation of a probationary sentence or parole." *People v. McCoy*, 939 P.2d 537, 540 (Colo. App. 1997).  This is so because YOS "revocations may cause defendants to be placed in a more restrictive confinement." *Id.*  Accordingly, due process in a YOS revocation proceeding requires (1) written notice of the claimed violations; (2) disclosure to the defendant of evidence supporting the violations; (3) a fair opportunity to be heard in person and to present evidence; (4) the right to confront and cross-examine adverse witnesses, unless good cause exists to deny such a right; (5) a neutral and detached hearing officer or judge; and (6) the fact

finder's statement as to the evidence relied on and reasons for the revocation. *Id.*

¶ 12 Nonetheless, a defendant facing revocation of a YOS sentence isn't entitled to the "full panoply of constitutional protections guaranteed to an accused at trial." *Id.* The prosecution must prove a YOS violation by a preponderance of the evidence, with one notable exception. *See id.*; *see also* § 16-11-206(3), C.R.S. 2025 ("[T]he prosecution has the burden of establishing by a preponderance of the evidence the violation of a condition of probation; except that the commission of a criminal offense must be established beyond a reasonable doubt unless the probationer has been convicted thereof in a criminal proceeding."). In addition, because the rules of evidence are relaxed in YOS revocation proceedings, hearsay evidence is admissible so long as the defendant is afforded a fair opportunity to rebut that evidence. *See McCoy*, 939 P.2d at 540; § 16-11-206(3); *see also People v. Kelly*, 919 P.2d 866, 868 (Colo. App. 1996) (noting that, in section 16-11-206(3), the General Assembly expressed its intent to have all probative evidence considered at probation revocation hearings, even if that evidence would be excluded in a criminal trial).

¶ 13    We review the record de novo to determine whether sufficient evidence supported the district court's revocation of a YOS sentence. *See Maestas v. People*, 2019 CO 45, ¶ 2.  In doing so, we consider whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant violated a condition of the sentence.  *See People v. Moses*, 64 P.3d 904, 908 (Colo. App. 2002) (concluding that the evidence was sufficient to support the trial court's revocation of a defendant's probation when the fact finder could conclude that the defendant had violated a condition of probation by using "a controlled substance or other dangerous or abusable drug or substance").

### 2.    Sufficient Evidence Supported the District Court's Revocation of Roybal's YOS Sentence

¶ 14    The contract that Roybal signed on his arrival at YOS provided that he could be removed or revoked from the program "as a result of failure to actively participate[,] failure to meet the terms and conditions of [his] sentence[,] and for serious misconduct."  The

YOS contract also set forth a non-exhaustive list of prohibited conduct, including, as applicable here,

- "[p]ossession of any contraband listed on the Administrative Head's Declaration of Contraband or as defined in the [DOC's] Code of Penal Discipline (COPD) [as] [c]lass I or II offenses";

- "[n]umerous violations of the [COPD]";

- involvement in a gang and gang-related behaviors;

- "[n]umerous instances of remediation and/or removal from [the general] population"; and

- "[f]ailure to participate in scheduled activities and events."

¶ 15    At the revocation hearing, the prosecution presented extensive evidence that Roybal had failed to comply with the contract during his time at YOS. To begin, Roybal had amassed eight class I and class II COPD convictions. Specifically, he was disciplined for

- fighting other offenders (twice), a class II violation;

- disobeying a lawful order, a class II violation;

- advocating or creating a facility disruption, a class II violation;

8

- theft, a class II violation;

- possessing a replica of a gun that he carved out of wood during a vocational class, a class II violation; and

- attempting to introduce a synthetic cannabinoid into the YOS (twice), a class I violation.

Roybal pled guilty to each COPD violation except for the narcotics-related infractions.

¶ 16    In addition to Roybal's disciplinary convictions, the record shows he engaged in other conduct prohibited under the YOS contract and the facility's posted operational rules, as evidenced by the fact that YOS staff generated roughly fifty incident reports involving his misbehavior. *See* § 18-1.3-407(1)(d) (providing that youthful offenders are required to follow DOC rules, regulations, and standards); *McCoy*, 939 P.2d at 540-41 (concluding that the trial court properly revoked a defendant's YOS sentence because the defendant, among other things, engaged in conduct contrary to YOS facility regulations); *cf. People v. Villela*, 2019 COA 95, ¶ 18 (noting that a district court may revoke a probationary sentence if the probationer violates any condition of the sentence).  For example, although Roybal left a gang with which he had associated when he

first arrived at YOS, he subsequently admitted joining another gang. Further, Lieutenant Julio Miramontes, Roybal's program supervisor, testified that he had violated the contract and operational rules by participating in three additional fights. In one of them, Roybal was part of a melee that included seven other offenders.

¶ 17　Similarly, Tony Fox, Roybal's former case manager, testified that roughly two gallons of homemade alcohol were found in Roybal's cell one week before his suitability hearing. According to Fox, this conduct violated the COPD and was the second time Roybal had engaged in it. Fox also testified about tattoo paraphernalia that were found in Roybal's locker box, a violation of the COPD and posted YOS operational rules.[2] And she said that Roybal had failed to complete some work assignments in the past, such as when he was terminated from a position in the kitchen after not reporting to work at least three times.

---

[2] Lieutenant Miramontes testified that the operational rules were posted on the facility's walls and available in each cell. As for the COPD, Fox testified that offenders were "given the COPD books and they [had] access to [the books] in the library and through [Fox]."

¶ 18 We disagree with Roybal's contention that Lieutenant Miramontes's and Fox's testimony regarding his YOS violations implicated due process concerns because the "witnesses lacked almost any personal knowledge of the alleged violations beyond what staff members had written in the[ir] reports." As noted, in a YOS revocation proceeding, all probative evidence is admissible so long as the defendant has the opportunity to rebut any hearsay. *See McCoy*, 939 P.2d at 540; § 16-11-206(3). Here, Roybal's counsel extensively cross-examined the prosecution's witnesses, and the district court gave him the opportunity to present his own evidence. *See McCoy*, 939 P.2d at 541 (upholding a YOS revocation order that was supported by only hearsay evidence because the "defendant had an opportunity to cross-examine the witnesses and to rebut the evidence through her own testimony").

¶ 19 Although Roybal's misconduct varied in seriousness, the district court concluded that his repeated violations of the YOS rules hampered his ability to fulfill the requirements of the program. As noted above, Roybal successfully completed the IDO component of his sentence and progressed to Phase I, which consisted of eight status levels. In Phase I, he attained the highest

"Phoenix" status on two occasions but "regressed" each time due to negative behavior. Moreover, the district court pointed to negative chronological entries, which documented updates concerning Roybal's behavior at the YOS facility, COPD violations, and other misconduct that it found precluded Roybal from advancing to higher status levels in Phase I.

¶ 20 Indeed, Lieutenant Miramontes testified that Roybal's rule violations resulted in six regressions from Phase I to the initial IDO phase, in which offenders are removed from the general population for the purpose of addressing their behavioral problems. Lieutenant Miramontes also testified that YOS staff sends an offender to the IDO phase when the offender exhibits intractability or lack of progress in the program.

¶ 21 Viewing this evidence in the light most favorable to the prosecution, as we must, a reasonable fact finder could conclude that Roybal failed to comply with the terms and conditions of the YOS sentence and that he could not successfully complete the program. Therefore, his sufficiency challenge to the district court's revocation order fails.

## B.  The District Court's Statement that Roybal Failed to Progress from Phase I Doesn't Warrant Reversal

¶ 22    Roybal next contends that the district court abused its discretion by revoking his YOS sentence for failing to progress to Phase II because he was statutorily ineligible to progress when YOS staff recommended his revocation from the program.  In support, he directs us to the following statement that the court made in its revocation order: "In the two years and nine months between the beginning of his sentence and the . . . suitability hearing, Mr. Roybal sometimes advanced to the highest level of Phase I, *but never advanced past Phase I.*"  (Emphasis added.)  We discern no error requiring reversal.

### 1.    Applicable Law and Standard of Review

¶ 23    As noted above, the YOS program consists of multiple components.  In addition to the IDO component and Phase I, offenders must also successfully complete Phases II and III to satisfy their YOS sentences.  § 18-1.3-407(3.3).  Offenders remain in Phase I until becoming eligible for Phase II, "which may be administered during the last three to six months of the period of institutional confinement."  § 18-1.3-407(3.3)(c)(I).  Roybal would

13

have become Phase II eligible about four months after his suitability hearing.

¶ 24    We review a district court's decision to revoke a defendant's YOS sentence for an abuse of discretion. *People v. Johnson*, 2022 COA 68, ¶ 35. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is based on a misunderstanding or misapplication of the law. *People v. Jones*, 2025 COA 43, ¶ 19.

### 2.    Any Error Was Harmless

¶ 25    Assuming, without deciding, that the challenged statement was improper, we conclude that reversal is not warranted because any error was harmless. An error is harmless if it does not affect the substantial rights of the parties. Crim. P. 52(a). In the context of a revocation proceeding, whether an error is harmless turns on whether the district court would have revoked the defendant's sentence despite the error. When "one or more bases for revoking [a sentence] are set aside on appeal, the revocation remains valid provided at least one violation is sustained." *People v. Loveall*, 231 P.3d 408, 416 (Colo. 2010). In addition, we may affirm a revocation order when "the record clearly shows the trial court would have

14

reached the same result even without consideration of the improper factors." *Id.* (quoting *State v. Ojeda*, 769 P.2d 1006, 1008 (Ariz. 1989)) (applying this standard to a district court's revocation of the defendant's sentence to sex offender intensive supervision probation (SOISP)).

¶ 26    Here, the record demonstrates that the district court would have revoked Roybal's YOS sentence regardless of its finding concerning his failure to advance beyond Phase I before his Phase II eligibility.  As discussed in greater detail in Part II.A.2, the prosecution presented overwhelming evidence that Roybal violated multiple terms and conditions of his sentence and that he could not successfully complete the YOS program.  The evidence established that he engaged in several physical altercations with other offenders, possessed contraband, received discipline for attempting to introduce drugs into the facility and other violations of the COPD, was involved in a gang, and repeatedly engaged in other disruptive conduct despite being given numerous opportunities to rectify his behavior.  As a result of his YOS violations, Roybal was unable to meaningfully progress in the program, and the court

relied on these independent revocation grounds throughout its order.[3]

¶ 27    Because the record makes clear that the district court would have revoked Roybal's YOS sentence even in the absence of its reference to his lack of progress past Phase I, we conclude that any error was harmless and, therefore, doesn't require reversal. *See id.*; *see also People v. Howell*, 64 P.3d 894, 897 (Colo. App. 2002) (upholding a revocation order after finding that evidence independent of the testimony challenged on appeal supported the revocation of SOISP); *cf. People v. Vigil*, 2023 COA 12, ¶ 39 (reversing and remanding to the district court an order revoking probation when the record didn't clearly show that the outcome of those proceedings would have been the same had the court properly resolved the issue under appellate review).

---

[3] For example, the court observed that Roybal demonstrated intractability and could not satisfy the requirements of the YOS because he "was returned to IDO multiple times"; "was cited for multiple violations"; and "was given a variety of opportunities for redirection and correction, designed to help adjust his behavior, but he rejected these opportunities or otherwise failed to take advantage of them."

### III.   Disposition

The order is affirmed.

JUDGE TAUBMAN and JUDGE BERGER concur.